(No. 72374.—

TIMOTHY K. REHG, Appellee, v. THE ILLINOIS DE-
PARTMENT OF REVENUE *et al.*, Appellants.

*Opinion filed October 22, 1992.*

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Susan Fred-

erick Rhodes, Assistant Attorney General, of Chicago, of counsel), for appellants.

Mark D. Lipton and James M. Mullady, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

The plaintiff, Timothy K. Rehg, brought an action in the circuit court of Champaign County seeking a declaration that the Cannabis and Controlled Substances Tax Act (the Act) (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*) was unconstitutional on its face and as applied to him. That statute imposes a tax on the transfer of marijuana and controlled substances. Following a hearing, the circuit court entered an order holding that the Act, as applied to the plaintiff, violated the double jeopardy provisions of the fifth amendment of the United States Constitution and article I, section 10, of the Illinois Constitution of 1970 (U.S. Const., amend. V; Ill. Const. 1970, art. I, §10). The Illinois Department of Revenue appealed directly to this court, pursuant to Supreme Court Rule 302(a)(1) (134 Ill. 2d R. 302(a)(1)).

## I. JURISDICTIONAL QUESTION

Before addressing the merits of the trial court's order, we must first consider whether we have jurisdiction over this appeal. As stated, the Department of Revenue appealed to this court pursuant to Supreme Court Rule 302(a)(1). That rule permits appeals directly to this court when a statute of the United States or of this State has been held invalid. 134 Ill. 2d R. 302(a)(1).

The trial court's order declared that "the Tax Act as applied to the plaintiff Timothy Rehg violates the 5th Amendment of the United States Constitution and Article

1 Section 10 of the Illinois Constitution." If this order is construed as resting exclusively upon the double jeopardy clause of the fifth amendment of the United States Constitution and its counterpart in the Illinois Constitution (Ill. Const. 1970, art. I, §10), the trial court's judgment is not appealable directly to this court pursuant to Rule 302(a)(1). An order that application of the Act to the plaintiff would violate the prohibition against double jeopardy does not invalidate the Act, any more than an order declaring that a particular defendant may not be tried for homicide invalidates the homicide statute. Such an order does not declare a statute unconstitutional; it simply declares that application of that statute would violate a particular defendant's constitutional rights. An appeal from such an order is properly brought in the appellate court pursuant to Rule 301 (134 Ill. 2d R. 301).

The quoted portion of the trial court's order suggests that the court simply held that the Act could not be applied constitutionally to the plaintiff, because it placed him twice in jeopardy for the same offense. A close reading of the "Memorandum Opinion and Order" reveals, however, that the court also declared the Act unconstitutional on its face. The trial court determined that the Act violated the due process clauses of the Federal and State Constitutions, because it imposed a criminal penalty without affording an accused the proper constitutional safeguards. Accordingly, we find that we have jurisdiction of this appeal pursuant to Supreme Court Rule 302(a)(1).

## II. FACTS

The facts are undisputed. In May 1990, the plaintiff was arrested by the InterAgency Task Force pursuant to an on-going investigation. The plaintiff's automobile was seized at the time of his arrest and was subsequently forfeited to the State. The plaintiff was later charged by information with burglary and two counts of manufacture or

delivery of a controlled substance. These charges stemmed from Rehg's theft of approximately $300 worth of prescription drugs from his father's pharmacy. In October 1990, the plaintiff pleaded guilty to one count of manufacture or delivery of a controlled substance. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(c).) The other charges were dismissed. On November 16, 1990, the trial court sentenced Rehg to four years' probation, and ordered him to perform 300 hours of public service work and to pay court costs.

Immediately after the sentencing hearing, the Department of Revenue (Department) served Rehg with a "Notice of Tax Liability for Cannabis and Controlled Substances Tax Jeopardy Assessment." The notice, which was issued on November 8, 1990, advised the plaintiff that a tax was due on 1,006 dosage units of a controlled substance. The notice advised the plaintiff that he owed a tax in the amount of $42,000, plus a penalty of $168,000 and interest of $3,675, for a total liability of $213,675. This assessment was made pursuant to the Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*).

The Act provides that any "dealer" who possesses cannabis or controlled substance must pay a tax and affix a stamp or other official indicia on the substance as evidence of payment of the tax. (Ill. Rev. Stat. 1989, ch. 120, par. 2155.) The Act defines a "dealer" as a person who "in violation of the Illinois Controlled Substances Act or the Cannabis Control Act, manufactures, produces, ships, transports, imports, sells or transfers, or possesses with intent to deliver to another person more than 30 grams of cannabis or more than 5 grams of any controlled substance or 5 or more dosage units of a controlled substance." (Ill. Rev. Stat. 1989, ch. 120, par. 2152.) The Act provides a varying rate of tax, depending on the type of drug involved. The Act also makes a dealer who fails to pay the tax subject to an additional penalty equal to four times the unpaid tax.

(Ill. Rev. Stat. 1989, ch. 120, pars. 2159, 2160.) Finally, the Act specifies that a dealer who distributes or possesses cannabis or controlled substances without affixing the required stamps is guilty of a Class 4 felony. Ill. Rev. Stat. 1989, ch. 120, par. 2160.

As stated, the plaintiff, in response to the "Notice of Tax Liability" served upon him, filed a complaint for declaratory judgment, challenging the constitutionality of the Act. He argued that double jeopardy principles barred the Department from enforcing the Act against him, because he previously had been criminally convicted and punished for the same offense. The trial court entered a preliminary injunction enjoining the Department from taking any further action under the Act. Following a hearing, the trial court declared the statute unconstitutional and quashed the jeopardy assessment.

Although the scope of the trial court's order is somewhat unclear, we find that it can fairly be said to rest upon two separate grounds. First, the court found the Act unconstitutional on its face because the Act, while labeled a tax, actually imposed a form of criminal punishment. Second, the court found that the Act was unconstitutional as applied to the plaintiff because the tax assessment punished the defendant a second time for the same offense. The court determined that the tax assessment was punishment within the meaning of the double jeopardy clause because it bore no rational relationship to the government's loss. We consider each of these findings separately.

## III. ANALYSIS

### A. Unconstitutional on Its Face?

As stated, the trial court declared the Act unconstitutional on its face on the ground that it imposed a form of criminal punishment. Because the validity of a legislative act is involved, we begin our analysis with the pre-

sumption that all statutes are constitutional. (*Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n* (1969), 42 Ill. 2d 385, 389.) The party challenging the statute in question bears the burden of clearly establishing that the statute is unconstitutional. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 227.) Any doubts will be resolved in favor of the validity of the law challenged. *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n* (1969), 42 Ill. 2d 385, 389.

With these principles in mind, we first consider the trial court's conclusion that the Act is facially invalid because it imposes a criminal penalty rather than a tax. Specifically, we must determine whether the Act, though civil in form, is actually a form of criminal punishment. A statute which imposes criminal punishment without affording an accused the procedural safeguards which accompany a criminal trial or the rights guaranteed by the fifth and sixth amendments of the Federal Constitution violates due process. See *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 164, 9 L. Ed. 2d 644, 658, 83 S. Ct. 554, 565.

Whether the Act imposes a criminal sanction is a matter of statutory construction. *Helvering v. Mitchell* (1938), 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630; see also *United States v. Halper* (1989), 490 U.S. 435, 447, 104 L. Ed. 2d 487, 501, 109 S. Ct. 1892, 1901 ("recourse to statutory language, structure, and intent is appropriate in identifying the inherent nature of a proceeding, or in determining the constitutional safeguards that must accompany those proceedings").

The United States Supreme Court has established a two-part test for determining when a statute, though nominally civil, actually imposes a criminal sanction. (*United States v. Ward* (1980), 448 U.S. 242, 248-49, 65 L. Ed. 2d 742, 749, 100 S. Ct. 2636, 2641; see *United*

*States v. One Assortment of 89 Firearms* (1984), 465 U.S. 354, 79 L. Ed. 2d 361, 104 S. Ct. 1099; *Rex Trailer Co. v. United States* (1956), 350 U.S. 148, 100 L. Ed. 149, 76 S. Ct. 219; *Helvering v. Mitchell* (1938), 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630.) First, the court must determine whether the legislature expressly or impliedly indicated a preference for a civil or a criminal label. (*Ward*, 448 U.S. at 248, 65 L. Ed. 2d at 749, 100 S. Ct. at 2641.) The fact that the legislature has indicated that it intended to establish a civil penalty, however, does not end the inquiry. The court must continue its analysis and determine whether, despite this expressed intent, the statutory scheme is "so punitive either in purpose or effect as to negate that intention." (*Ward*, 448 U.S. at 249, 65 L. Ed. 2d at 749, 100 S. Ct. at 2641.) If so, then even a nominally civil proceeding will be treated as criminal in nature. With regard to the second inquiry, the Court has noted that " 'only the clearest proof' " will suffice to establish a punitive purpose or effect for a nominally civil statute. *Ward*, 448 U.S. at 249, 65 L. Ed. 2d at 749, 100 S. Ct. at 2641, quoting *Flemming v. Nestor* (1960), 363 U.S. 603, 617, 4 L. Ed. 2d 1435, 1448, 80 S. Ct. 1367, 1376.

Applying this test here, we conclude that the monetary penalty imposed by the Act is civil and does not trigger the constitutional protections afforded to a criminal defendant. With respect to the first prong, we find that the legislature clearly indicated a preference for a civil label. The statute itself is labeled a "tax" and the legislature provided a distinctly civil procedure for collection of both the tax and the addition to that tax. See Ill. Rev. Stat. 1989, ch. 120, pars. 2160, 2166; see also *United States v. Sanchez* (1950), 340 U.S. 42, 45, 95 L. Ed. 47, 50, 71 S. Ct. 108, 110 ("[t]he fact Congress provided civil procedure for collection indicates its intention that the tax be treated as such").

Applying the second prong of the *Ward* test, we hold that the plaintiff has not provided "the clearest proof" that the purpose or effect of the statutory scheme is "so punitive" as to negate the civil label. In analyzing this second *Ward* inquiry, we find it appropriate to consider a number of factors, commonly referred to as the *"Mendoza-Martinez* factors." (See *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 661, 83 S. Ct. 554, 567-68.) These factors include: "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned ***." *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 661, 83 S. Ct. 554, 567-68.

Analysis of these factors supports a "civil" designation for the Act. Collection of a tax does not result in the imposition of an "affirmative disability or restraint" upon the plaintiff. (*Cf. Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 661, 83 S. Ct. 554, 567-68 (statute which divested persons who fled the country to avoid the draft of their citizenship involved an affirmative disability or restraint).) On the contrary, monetary assessments, such as those imposed under the Act, are traditionally regarded as a form of civil relief. (See *United States v. Ward* (1980), 448 U.S. 242, 256, 65 L. Ed. 2d 742, 754, 100 S. Ct. 2636, 2644 (Blackmun, J., concurring, joined by Marshall, J.).) Furthermore, while criminal statutes generally come into play only upon a finding of *scienter*, liability under the

Act is absolute and does not depend upon a finding of criminal intent. See *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 661, 83 S. Ct. 554, 567-68 (a sanction that "comes into play only on a finding of *scienter*" might be indicative of a criminal proceeding).

It is true that the behavior to which the tax applies is already a crime and that the tax imposed by the Act tends to punish or deter those who possess or sell illegal drugs. Indeed, the legislative history of the Act, including the comments of several legislators, reveals that the legislature intended the tax to diminish the economic rewards associated with drug trafficking. The fact that the Act has a deterrent purpose and effect does not, by itself, transform what was clearly intended as a civil statute into a criminal penalty. Every tax discourages or deters the activity taxed to some degree. Indeed, the application of ordinary tort law has a deterrent effect. The United States Supreme Court recognized this fact long ago in *Sonzinsky v. United States* (1937), 300 U.S. 506, 81 L. Ed. 772, 57 S. Ct. 554, when it stated:

> "Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any the less a tax because it has a regulatory effect [citations] and it has long been established that [a legislative act] which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed." *Sonzinsky*, 300 U.S. at 513, 81 L. Ed. at 775, 57 S. Ct. at 555-56.

The Supreme Court later reaffirmed these principles in a decision which considered the validity of an occupational tax imposed on persons engaged in the business of accepting wagers. (*United States v. Kahriger* (1953), 345

U.S. 22, 97 L. Ed. 754, 73 S. Ct. 510.) The *Kahriger* Court upheld the tax, stating:

> "[A] federal excise tax does not cease to be valid merely because it discourages or deters the activities taxed. Nor is the tax invalid because the revenue obtained is negligible. \*\*\*
>
> It is axiomatic that the power \*\*\* to tax is extensive and sometimes falls with crushing effect on businesses deemed unessential or inimical to the public welfare, or where, as in dealings with narcotics, the collection of the tax also is difficult. As is well known, the constitutional restraints on taxing are few." *United States v. Kahriger* (1953), 345 U.S. 22, 28, 97 L. Ed. 754, 760-61, 73 S. Ct. 510, 513.

The material question here is not whether the Act has a deterrent effect. Instead, the relevant questions are whether the Act serves some alternate purpose as well, and whether the tax imposed is excessive in relation to that alternative purpose. (See *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 661, 83 S. Ct. 554, 567-68,) It is quite evident that the Act serves a purpose other than deterring transfers of illegal drugs. The legislature also intended the Act to provide revenue to compensate the State for costs incurred as a consequence of illegal drug manufacture and use. The aim of compensating the State for its efforts to prevent or mitigate the harms caused by the sale and use of illegal drugs is a remedial goal.

The tax imposed upon the transfer of illegal drugs under the Act, while substantial, is not excessive in relation to the remedial purpose of the statute. The legislature may have rationally believed that drug dealers as a group impose immeasurable costs upon the State, but do not bear their fair share of the tax burden. The tax imposed is rationally related to the legislature's desire to require those who profit from illegal drug use to reimburse the State for the costs of remedying the societal

ills that stem from drug use. Those costs include not only increased law enforcement expense resulting from drug-related violence, but also the severe collateral consequences of drug traffic, such as drug addiction, lost productivity, greater health costs and more demands on public assistance. The tax also provides an additional source of revenue to help offset the costs of drug education and to provide reparation to victims of drug-related crime. The tax imposed bears a reasonable relation to the purpose of compensating the State for the costs attributable to transfers of illegal drugs. The Act is not so punitive, either in purpose or effect, as to negate the legislature's manifest intent to establish a civil, remedial mechanism.

The plaintiff argues, however, that the sanction imposed under the Act for nonpayment of the tax (four times the unpaid tax) is so severe that it transforms the tax into a criminal penalty. We disagree. The United States Supreme Court rejected a similar argument in *Helvering v. Mitchell* (1938), 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630. In that case, a taxpayer was indicted and prosecuted for willful evasion of taxes, but was acquitted at trial. The Commissioner of Internal Revenue then brought an action to collect the delinquent taxes ($728,709.84), plus a 50% fraud penalty. The taxpayer argued that the 50% civil penalty was intended as punishment and the tax assessment proceeding was actually a second criminal proceeding based on a single course of conduct.

The Supreme Court disagreed. Applying the same two-part test described above, the Court had little difficulty concluding that Congress intended the statute to impose a civil penalty. The Court determined that the 50% sanction was in fact remedial, intended "primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of in-

vestigation and the loss resulting from the taxpayer's fraud." (*Mitchell*, 303 U.S. at 401, 82 L. Ed. at 923, 58 S. Ct. at 634.) The Court noted:

> "Forfeiture of goods or their value and *the payment of fixed or variable sums of money* are other sanctions which have been recognized as enforceable by civil proceedings \*\*\*. [Citation.] *In spite of their comparative severity, such sanctions have been upheld against the contention that they are essentially criminal and subject to the procedural rules governing criminal prosecutions.*" (Emphasis added.) *Mitchell*, 303 U.S. at 400, 82 L. Ed. at 922, 58 S. Ct. at 633.

See also *United States ex rel. Marcus v. Hess* (1938), 317 U.S. 537, 551-52, 87 L. Ed. 443, 453, 63 S. Ct. 379, 388 (Civil Fraud Act does not impose a "criminal" sanction because the chief purpose of the statute "was to provide for restitution to the government of money taken from it by fraud, and \*\*\* the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole").

We recognize that the penalty imposed under the Act is more severe than the penalty imposed under the tax statute at issue in *Mitchell*. The legislature may have rationally believed, however, that a more severe penalty was warranted because collection of a tax on controlled substances would be more difficult than collection of other types of taxes. The Act is different from an ordinary tax statute because the activity taxed—that is, the transfer of controlled substances—is itself illegal. The legislature may have rationally believed that persons engaged in such criminal conduct would be particularly reluctant to pay the tax voluntarily. Imposition of a substantial penalty therefore encourages "dealers" to pay the tax before transferring drugs so as to avoid the penalty imposed for nonpayment of the tax. The legislature may have also believed that the costs of uncovering

transfers of unstamped drugs and prosecuting the tax evaders would be substantial. The penalty provision provides a source of revenue to reimburse the State for costs incurred in attempting to discover violations of the Act, to prosecute the violators, and to avert or mitigate the consequent harms.

Viewed in the abstract, the penalty imposed bears a reasonable relation to the purpose of compensating the State for its expenses. Indeed, in circumstances where the amount of drugs transferred is small, a penalty of four times the tax might not be sufficient to completely reimburse the State for the expense of investigating, uncovering and prosecuting those who transferred the drugs without paying the tax. It cannot be said that the measure of recovery fixed by the legislature is so unreasonable or excessive that it transforms what was clearly intended as a civil remedy into a criminal penalty. Since the Act was designed to raise revenue rather than to "vindicate public justice," it is civil in nature.

Our conclusion is supported by the United States Supreme Court's decision in *United States v. Sanchez* (1950), 340 U.S. 42, 95 L. Ed. 47, 71 S. Ct. 108. In *Sanchez*, the Supreme Court upheld the Marijuana Tax Act (now repealed) against a challenge that it imposed a penalty and not a tax. That statute imposed a small "occupational" tax upon persons who imported, manufactured, sold or dispensed marijuana. The statute also imposed a second tax upon the actual transfer of marijuana. A "transfer" tax of $1 per ounce was imposed on persons who had paid the "occupational" tax and registered. A more substantial transfer tax of $100 per ounce was imposed on persons who had not paid the occupational tax and registered. In *Sanchez*, as in the present case, persons who possessed illegal drugs without paying the tax challenged the statute on the ground that it imposed a criminal penalty, rather than a tax.

The Court in *Sanchez* held that the statute was a legitimate exercise of the taxing power notwithstanding its collateral regulatory purpose and effect. (*Sanchez*, 340 U.S. at 45, 95 L. Ed. at 50, 71 S. Ct. at 110.) The Court found that, despite its close resemblance to a penalty, the statute had several proper purposes, including raising revenue and controlling the traffic of marijuana. The Court also held that the more severe tax imposed upon unregistered transfers of marijuana, as opposed to registered transfers, was reasonable. The Court stated that the more substantial tax imposed upon unregistered transfers (*100 times larger* than the tax imposed upon registered transfers) was rationally related to Congress' intent to secure payment of the tax by transferees and to stop transfers to unregistered persons. (*Sanchez*, 340 U.S. at 46, 95 L. Ed. at 50, 71 S. Ct. at 110-11.) The Court also noted that the more substantial tax provided "an additional source from which the expense of unearthing clandestine transfers can be recovered." (*Sanchez*, 340 U.S. at 45-46, 95 L. Ed. at 50, 71 S. Ct. at 110-11.) We likewise conclude that the sanction imposed under the Act for nonpayment of the tax (only *four times* the tax) is not so severe that it transforms the tax into a criminal penalty.

Accordingly, we hold that the substantial tax and penalty imposed upon "dealers" under the Act is civil in nature, and that the Act is not unconstitutional on its face for failing to provide such "dealers" with the constitutional safeguards which ordinarily accompany a criminal trial. See *State v. Berberich* (1991), 248 Kan. 854, 811 P.2d 1192; *Harris v. State Department of Revenue* (Fla. App. 1990), 563 So. 2d 97.

## 2. Unconstitutional As Applied?

Having concluded that the monetary sanction imposed under the Act is civil, rather than criminal, in

nature, we next consider whether the sanction is nevertheless "punishment" for purposes of the double jeopardy clause. The double jeopardy clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. See *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 23 L. Ed. 2d 656, 664-65, 89 S. Ct. 2072, 2076.

### a. *Multiple Prosecution*

If the Act imposed a criminal sanction, application of the statute to any person who previously had been criminally prosecuted or punished for the same offense would violate the multiple-prosecution prong of the double jeopardy clause. (See *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 23 L. Ed. 2d 656, 665, 89 S. Ct. 2072, 2076.) Because we have found that the proceeding to collect the tax and penalty is civil in nature, it does not qualify as a subsequent prosecution within the meaning of the double jeopardy clause. (See *Taylor v. Sherrill* (1991), 169 Ariz. 335, 819 P.2d 921; see also 3 W. La-Fave & J. Israel, Criminal Procedure §24.1(b) (1984).) Thus, the prohibition against *multiple prosecutions* is not implicated in this case. We express no opinion, of course, as to whether the State could have initiated a second criminal proceeding against Rehg pursuant to that portion of the Act which authorizes the imposition of criminal penalties upon those who fail to pay the tax. That question is not before us.

### b. *Multiple Punishment*

Only the third protection offered by the double jeopardy clause is at issue here. The protection against "multiple punishment" prohibits the State from "punishing twice, or attempting a second time to punish criminally,

for the same offense." (*Helvering v. Mitchell* (1938), 303 U.S. 370, 399, 82 L. Ed. 917, 922, 58 S. Ct. 630, 633.) Analysis of this protection is case-specific, requiring an individualized assessment of the civil sanction imposed and the purposes that sanction serves in a *particular* case. The question raised here is whether the tax imposed *in this case*, upon conduct that was the subject of a prior criminal prosecution and punishment, is so excessive that it constitutes a second "punishment" prohibited by the Federal and State Constitutions.

The multiple-punishment prong of the double jeopardy clause is normally triggered only when a sovereign attempts to *criminally* punish a defendant twice for the same offense. (*United States v. One Assortment of 89 Firearms* (1984), 465 U.S. 354, 79 L. Ed. 2d 361, 104 S. Ct. 1099.) As a general rule, the clause does not bar the State from imposing both a civil and a criminal penalty upon defendant for the same offense. (*Helvering v. Mitchell* (1938), 303 U.S. 391, 399, 82 L. Ed. 917, 922, 58 S. Ct. 630, 633.) The State may impose a criminal and civil sanction in a single proceeding, as long as the court determines that "the total punishment [does] not exceed that authorized by the legislature." (*United States v. Halper* (1989), 490 U.S. 435, 450, 104 L. Ed. 2d 487, 503, 109 S. Ct. 1892, 1903, citing *Missouri v. Hunter* (1983), 459 U.S. 359, 368-69, 74 L. Ed. 2d 535, 544, 103 S. Ct. 673, 679.) Recently, however, the United States Supreme Court held that a disproportionately large civil sanction imposed in a subsequent civil proceeding may, under certain circumstances, constitute "punishment" within double jeopardy's multiple-punishment prohibition. *United States v. Halper* (1989), 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892.

The plaintiff here contends that he has been punished once for conduct arising out of his possession of the unstamped drugs, when he was sentenced upon his convic-

tion for manufacture or delivery of a controlled substance. He argues that, under *Halper*, the State cannot punish him a second time without violating the double jeopardy clause's proscription against multiple punishment. He argues that the civil penalty imposed upon him is punishment because it is meant to deter his conduct.

As noted, the United States Supreme Court recently addressed a similar contention in *United States v. Halper* (1989), 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892. In *Halper*, the respondent submitted 65 false Medicare claims, each overcharging the government by $9, and cumulatively overbilling the government for $585. Halper was prosecuted, convicted, sentenced to two years' imprisonment and fined $5,000. Following Halper's criminal prosecution, the government brought a civil suit based on the same 65 false Medicare claims under the False Claims Act. That statute authorized the government to collect a civil penalty of $2,000 for each of the 65 false claims, plus two times the government's actual damages and court costs. Consequently, Halper was subject to a civil sanction of more than $130,000. The actual damages directly attributed to Halper's false claims, however, amounted to only $585, plus approximately $16,000 which the government spent in investigating and prosecuting Halper's false claims.

The Federal district court found that, in light of Halper's prior criminal punishment, imposing the full sanction would violate the multiple-punishment proscription of the double jeopardy clause. The court recognized that the False Claims Act imposed a civil, rather than a criminal punishment. The court held, however, that imposing the full civil sanction would constitute a second punishment in violation of the double jeopardy clause. The district court allowed only the recovery of double damages, or $1,170, plus $16,000 in costs. See *Halper*,

490 U.S. at 440, 104 L. Ed. 2d at 496, 109 S. Ct. at 1897.

The United States Supreme Court agreed that the disparity between Halper's $130,000 liability and the government's estimated $16,000 in costs was sufficiently disproportionate that the sanction constituted a punishment in violation of the double jeopardy clause. The Court concluded:

> "[U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." (*Halper*, 490 U.S. at 448-49, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.)

Thus, under *Halper*, the controlling question in determining whether a sanction must be deemed punishment is whether the civil penalty at issue bears a rational relationship to the damages suffered by the government.

The plaintiff here, relying upon *Halper*, claims that the civil sanction imposed upon him under the Act qualifies as "punishment" within the meaning of the double jeopardy clause. He contends the tax amount assessed against him ($213,675) bears no rational relationship to the damages suffered by the State. He argues that the Act therefore may not constitutionally be applied to him, because the tax assessment constitutes a second punishment prohibited by the double jeopardy clauses of the Federal and State Constitutions.

In considering the plaintiff's claims, we must bear in mind that the Court in *Halper* limited the scope of its holding in several important respects. First, the Court pointed out that a civil remedy does not rise to the level of "punishment" simply because the legislature authorized civil recovery in excess of the State's actual damages. The *Halper* Court specifically reaffirmed three

prior decisions which held that a large civil sanction did not constitute punishment within the meaning of the double jeopardy clause. *Helvering v. Mitchell* (1938), 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630 ($350,000 penalty, representing 50% of the unpaid tax, was remedial in nature because it reimbursed the government for investigatory and other costs resulting from taxpayer fraud); *United States ex rel. Marcus v. Hess* (1943), 317 U.S. 537, 87 L. Ed. 443, 63 S. Ct. 379 (civil fine of $315,000 not barred by defendant's prior conviction for criminal conspiracy to defraud the United States government); *Rex Trailer Co. v. United States* (1956), 350 U.S. 148, 100 L. Ed. 149, 76 S. Ct. 219 (action to recover $10,000 plus double damages and court costs for fraudulent purchases in violation of Federal Surplus Property Act not barred by prior criminal conviction based on same conduct).

Second, the *Halper* Court recognized that it is often difficult or impossible to determine the precise dollar amount at which a civil sanction ceases to be remedial and takes on the quality of punishment. The Court stated that its prior cases had established that the government "is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis." *Halper*, 490 U.S. at 446, 104 L. Ed. 2d at 500, 109 S. Ct. at 1900.

Third, the Court held that a civil sanction will rarely constitute punishment within the double jeopardy clause. *Halper*, 490 U.S. at 449, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902 ("we announce *** a rule for the rare case *** where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused").

Finally, the Court held that punishment is not measured from the defendant's perspective. The Court noted:

"This is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment." (*Halper*, 490 U.S. at 447 n.7, 104 L. Ed. 2d at 501 n.7, 109 S. Ct. at 1901 n.7.)

A civil penalty constitutes punishment only when it is completely unrelated to the *government's* damages and expenses. *Halper*, 490 U.S. at 449, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.

The *Halper* Court's analysis suggests that a threshold exists that must be crossed before an inquiry into the multiple-punishment prong of the double jeopardy clause is required. Certain civil sanctions, such as reasonable liquidated damages, fall below this threshold and are presumed to be rationally related to the government's costs without further scrutiny. When the sanction appears to be *extreme* in relation to the government's damages and costs, however, the threshold is crossed. At that point, a civil sanction will be closely scrutinized to determine whether it constitutes "punishment" within the meaning of the double jeopardy clause.

Bearing this analysis in mind, we consider the plaintiff's claim that the monetary sanction imposed upon him under the Act constitutes "punishment" within the meaning of the double jeopardy clause. Initially we note that, in *Halper*, the district court was able to estimate, with some degree of accuracy, the actual loss which the government sustained as a result of the defendant's fraudulent conduct and the amount which it spent prosecuting the defendant. The district court then compared this sum with the monetary sanction which the government sought and found that the sanction was more than

eight times the amount which the government lost or expended as a result of the defendant's conduct. The district court concluded that imposition of the total sanction authorized by statute would violate double jeopardy principles. The Supreme Court agreed that the 8-to-1 ratio between the sanction and the government's loss was extreme.

In this case, on the other hand, such an analysis is more difficult because neither the State nor the plaintiff introduced any evidence regarding the total loss the State suffered as a result of the plaintiff's conduct. We know, of course, that the plaintiff's failure to pay the tax resulted in a loss to the State of $42,000 in tax revenue. We also know that the Act imposes a sanction of four times the unpaid tax. We do not know, however, whether this $168,000 sanction even remotely approximates the amount which the State spent in investigating and prosecuting the plaintiff.

When confronted with such a gap in the record, we conclude that a number of factors should be considered in determining whether the statutory sanction crosses the threshold established in *Halper*—that is, whether the civil sanction appears "extreme" in relation to the government's damages and costs. One factor to consider is whether the amount of the sanction imposed upon a particular offender is rationally related to the expense of detecting and prosecuting the *type* of offense which the defendant has committed. *United States v. Walker* (9th Cir. 1991), 940 F.2d 442 ($500 civil fine imposed upon a defendant who failed to present marijuana to custom officials for inspection when he entered the country was rationally related to the costs which the government incurs in maintaining border check points and administering the customs system).

Some courts have made this factor determinative. When the evidence tends to show that the sanction im-

posed *is* rationally related to the expense of detecting and prosecuting the type of offense which the defendant has committed, the sanction is upheld. (*United States v. WRW Corp.* (E.D. Ky. 1989), 731 F. Supp. 237 ($90,000 fine imposed upon defendants for violations of the Mine Safety and Health Act was not barred by double jeopardy; any loss which the government suffered as a result of the defendants' safety violations was unquantifiable, but the fine was not "extreme and divorced" from the ancillary costs of detection, investigation and prosecution which the government routinely incurred in administering the Act).) When the sanction *is not* rationally related to the costs of detecting the type of offense the defendant committed, courts require the government to show that the sanctions imposed upon a given defendant are reasonably related to the expenses incurred in investigating and prosecuting the particular defendant upon whom the sanction is imposed. *United States v. Hall* (M.D. Pa. 1990), 730 F. Supp. 646, 655 ($1,035,000 civil fine imposed on defendant who was previously convicted of illegally transporting bearer bonds was barred by double jeopardy, where the defendant introduced uncontradicted evidence that the government sustained only minimal expense in detecting the offense and that penalty equal to the face value of the bonds was not "rationally related to the goal of making the Government whole").

Under the circumstances of this case, however, reliance upon this factor alone is inappropriate because it is not entirely clear what conduct and costs may be considered in determining whether the $168,000 civil fine is excessive. In *Halper*, the same conduct (submission of false Medicare claims to the government) formed the basis of both the criminal punishment and the subsequent civil fine. Here, however, the conduct for which the defendant was criminally punished (manufacture or delivery of a controlled substance) is different from that which is the

subject of the civil sanction (failure to pay a tax on the controlled substance).

If we consider the costs which the State routinely incurs in detecting, investigating and prosecuting criminal drug offenses, the sanction does not appear "extreme and divorced" from the State's costs. On the contrary, the $168,000 penalty imposed upon the plaintiff appears to bear a rational relationship to the goal of compensating the State for the costs typically incurred in investigating and prosecuting that *type* of conduct.

If, on the other hand, we consider only the costs typically incurred in investigating and prosecuting persons who fail to pay a tax on controlled substances, the $168,000 sanction appears to be extreme in relation to those costs. Regulations issued in conjunction with the Act suggest that the amount of money which the State spends in investigating and prosecuting that *type* of conduct (failure to pay the tax) will be minimal. One of these regulations requires prosecuting officials to notify the Department of Revenue whenever they obtain a conviction of a dealer for violation of the Illinois Controlled Substances Act or the Cannabis Control Act, where the container of drugs in the dealer's possession did not bear tax stamps. Using the information received from prosecuting officials, the Department serves a "Notice of Tax Liability" upon the dealer, such as that served upon the plaintiff in this case. (86 Ill. Adm. Code §428.130 (1991).) This regulation suggests that the State will generally sustain only minimal expense in detecting violations of the Act.

Because it is unclear whether the sanction at issue here bears a rational relationship to the amount which the State spends in detecting and prosecuting the *type* of offense which the defendant has committed, additional factors must be considered. We find that two other factors are relevant in determining whether the threshold established in *Halper* between a permissible civil fine

and an impermissible second punishment has been crossed in this case. One important factor is whether the civil sanction imposed under the Act is comparable to civil penalties imposed under other Illinois statutes. (See *Solem v. Helm* (1983), 463 U.S. 277, 77 L. Ed. 2d 637, 103 S. Ct. 3001.) Our research has failed to disclose any other Illinois tax statute which imposes a penalty which even remotely approximates the substantial penalty of four times, or 400%, of the unpaid tax imposed under the Act. The harshest penalty imposed under any other tax statute is only 75% percent of the unpaid tax. (Ill. Rev. Stat. 1989, ch. 120, par. 10—1002 (fraudulent failure to pay income tax); see also Ill. Rev. Stat. 1989, ch. 120, par. 1209 (50% penalty for fraudulent failure to pay local services on mobile homes tax); Ill. Rev. Stat. 1989, ch. 120, par. 405A—8 (25% penalty for failure to pay estate and generation-skipping transfer tax).) Even if we consider nontax statutes, the penalty imposed under the Act appears excessive. See, *e.g.*, Ill. Rev. Stat. 1989, ch. 38, par. 60—7 (authorizing treble damage award for violations of State antitrust laws); but see Ill. Rev. Stat. 1989, ch. 111½, par. 1042 (authorizing civil penalty not to exceed $50,000 for each violation of environmental protection laws, plus an additional $10,000 for each day the violation continues).

Another important consideration is whether the 400% penalty imposed under the Act is comparable to the penalty imposed for the same conduct in other jurisdictions. (See *Solem v. Helm* (1983), 463 U.S. 277, 77 L. Ed. 2d 637, 103 S. Ct. 3001.) Our research reveals that at least 20 other States have statutes which impose a substantial tax upon cannabis and other controlled substances. Almost all of these State statutes impose a civil penalty substantially less than that imposed under our Act. (See, *e.g.*, Ala. Code §40—17A—9 (Michie Supp. 1991) (100%); Iowa Code Ann. §421A.12 (West Supp. 1992) (100%);

Minn. Stat. Ann. §279D.09 (West 1991) (100%); Wis. Stat. Ann. §139.95 (West Supp. 1991) (100%).) In fact, only one State, other than Illinois, imposes a civil penalty in excess of 100% of the unpaid tax. Colo. Rev. Stat. Ann. §39—28.7—107 (West 1990) (1,000% penalty).

In sum, applying the three factors discussed above to the civil penalty imposed upon the plaintiff here, we find that the 400% penalty crosses the threshold established in *Halper*. The $168,000 penalty appears excessive in relation to the costs the State would generally incur in investigating and prosecuting the *type* of conduct in which the plaintiff engaged (failure to comply with the Act). In addition, the sanction is disproportionately large when compared with civil penalties imposed upon other tax offenders in this State. Finally, the penalty appears excessive when compared with penalties imposed in other States upon persons who fail to pay a tax upon controlled substances. Accordingly, we conclude that the 400% penalty which the State seeks to impose upon the plaintiff here may be so extreme and so divorced from the State's expenses as to constitute punishment within the meaning of the double jeopardy clause.

The trial court erred, however, in quashing the tax assessment outright. The State should be given an opportunity to present evidence of its actual costs arising from the plaintiff's conduct. The trial court must determine, on the basis of such evidence, the size of the civil sanction the State may receive without crossing the line between remedy and punishment. *United States v. Halper* (1989), 490 U.S. 435, 450, 104 L. Ed. 2d 487, 502-03, 109 S. Ct. 1892, 1902.

We note, however, that on remand no weight should be given to the plaintiff's argument that the State was motivated by an intent to punish him. The plaintiff's brief urges this court to consider a number of facts and circumstances unique to his case which, he claims, dem-

onstrate that the sanction was intended to punish rather than to make the State whole. For example, the plaintiff points to the fact that the "Notice of Tax Liability" was issued on November 8, 1990, but was not served upon him until a week later, immediately after his sentencing hearing. He also claims that, after the trial court imposed a sentence of probation, the assistant State's Attorney turned around and gave a "thumbs up" signal to someone seated in the back of the court room. This person was apparently the same person who ultimately served the plaintiff with the "Notice of Tax Liability" after the sentencing hearing. The plaintiff claims that this sequence of events demonstrates that the State was motivated by an intent to punish him with a substantial civil sanction because it was dissatisfied with the sentence the trial court imposed in the criminal proceeding. We conclude, however, that these facts are totally irrelevant to the question of whether the civil sanction imposed upon the plaintiff qualifies as a second punishment within the meaning of the double jeopardy clause. As Justice Kennedy stated, in his concurring opinion in *Halper*:

> "Today's holding, I would stress, constitutes an objective rule that is grounded in the nature of the sanction and the facts of the particular case. It does not authorize courts to undertake a broad inquiry into the subjective purposes it may be thought to lie behind a given judicial proceeding. [Citations.] Such an inquiry would be amorphous and speculative, and would mire the courts in the quagmire of differentiating among the multiple purposes that underlie every proceeding, whether it be civil or criminal in name. It would also breed confusion among legislators who seek to structure the mechanisms of proper law enforcement within constitutional commands." (*Halper*, 490 U.S. at 453, 104 L. Ed. 2d at 504-05, 109 S. Ct. at 1904 (Kennedy, J., concurring).)

As previously stated, the controlling question is whether the civil penalty imposed in the second proceeding bears any rational relation to the damages suffered by the State. Here, it appears that the $168,000 sanction imposed upon the plaintiff may be sufficiently disproportionate to the State's costs as to constitute a second punishment within the meaning of the double jeopardy clause. Accordingly, we vacate the circuit court's order quashing the tax assessment and remand this cause to the circuit court so that the State may present evidence of its actual costs arising from Rehg's failure to comply with the Act, and for such further proceedings as may be required in accordance with the views expressed herein.

*Circuit court reversed;*
*cause remanded.*