306

KEITH ROBERT WILSON, Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Appellants.

*Opinion filed February 15, 1996.*

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for appellants.

George F. Taseff, of Bloomington, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

In this appeal we are again asked to consider whether the Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*) violates the double jeopardy provisions of the fifth amendment to the United States Constitution (U.S. Const., amend. V) and article I, section 10, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 10). Although we rejected a claim that the Act is unconstitutional in *Rehg v. Illinois Department of Revenue* (1992), 152 Ill. 2d 504, the circuit court in this case concluded that a contrary conclusion is now mandated by the United States Supreme Court's recent opinion in *Department of Revenue v. Kurth Ranch* (1994), 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937. Accordingly, the circuit court declared that the statute is invalid and cannot be applied where, as here, the party from whom the tax is sought has already been convicted and sentenced on criminal charges involving the same contraband. The Department of Revenue now appeals directly to our court. (134 Ill. 2d R. 302(a)(1).) We affirm.

The controversy before us began in January of 1991, when Keith Wilson was indicted by a grand jury on

three counts of unlawful possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56¹/₂, par. 1401) and one count of unlawful manufacture of cannabis (Ill. Rev. Stat. 1989, ch. 56¹/₂, par. 705(d)). Immediately after the indictments were handed down, the Department of Revenue determined that Wilson was subject to liability under the Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*), which provides:

> "No dealer may possess any cannabis or controlled substance upon which a tax is imposed by this Act unless the tax has been paid on the cannabis or controlled substance as evidenced by a stamp or other official indicia issued by the Department." (Ill. Rev. Stat. 1989, ch. 120, par. 2155.)

Under the Act, a "dealer" is defined as

> "a person who in violation of the Illinois Controlled Substances Act or the Cannabis Control Act manufactures, produces, ships, transports, imports, sells or transfers or possesses with intent to deliver to another person more than 30 grams of cannabis or more than 5 grams of any controlled substance or 5 or more dosage units of a controlled substance." Ill. Rev. Stat. 1989, ch. 120, par. 2152.

According to the Department, Wilson's liability amounted to a total of $54,385 in taxes, $217,540 in penalties and $2,039.46 in interest. The basic tax liability was computed based on the statutory rate of $5 a gram in tax for 277 grams of cannabis, $250 a gram in tax for 7 grams of cocaine and LSD, and $250 a gram in tax for 205 grams of psilocin. (Ill. Rev. Stat. 1989, ch. 120, par. 2159.) The penalty was set, by statute, at an amount equal to four times the amount of the tax. Ill. Rev. Stat. 1989, ch. 120, par. 2160.

Notice of the assessment was served on Wilson on January 24, 1991, pursuant to section 16 of the Act (Ill. Rev. Stat. 1989, ch. 120, par. 2166), along with notice of the Department's intention to seize Wilson's assets if he failed to make full payment within 10 days (Ill. Rev.

Stat. 1989, ch. 120, par. 2173). Wilson promptly filed a protest with the Department and requested a hearing, to which he was entitled by statute. (Ill. Rev. Stat. 1989, ch. 120, par. 2166(c).) Thereafter, he pleaded guilty to the criminal charges under a superseding indictment and was sentenced to a term of probation of 24 months, a fine of $1,000, court costs, and 80 hours of community service.

When the Department proceeded to levy upon Wilson's property pursuant to section 23 of the Act (Ill. Rev. Stat. 1989, ch. 120, par. 2173) without affording him the hearing he had requested, Wilson commenced this action for declaratory and injunctive relief in the circuit court of Champaign County. The basis for Wilson's claim was that the Act could not be enforced against him because, *inter alia*, subjecting him to liability under the Act after he had already been prosecuted and sentenced on the criminal charges violated State and Federal constitutional prohibitions against double jeopardy.

Once this action was commenced, Wilson obtained a preliminary injunction barring the Department from taking any further action to collect the monies it was claiming from him until after the case was resolved. Discovery was then conducted, after which Wilson moved for summary judgment. That motion was granted, following a hearing, and the circuit court declared that under the United States Supreme Court's recent opinion in *Department of Revenue v. Kurth Ranch* (1994), 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937, imposition of a tax under the Act would violate the double jeopardy clause's prohibition against successive punishments for the same offense. Accordingly, the court granted judgment in Wilson's favor and ordered the Department to return all of the assets it had seized from him. The Department has now appealed.

This court reviews *de novo* a trial court's finding with respect to the constitutionality of a statute. We presume statutes to be constitutional and must construe enactments by the legislature so as to uphold their validity whenever it is reasonably possible to do so. (*People v. R.L.* (1994), 158 Ill. 2d 432, 437.) Where a statute is unconstitutional, however, our duty is to declare it invalid no matter how desirable or beneficial its purposes might be. *People v. P.H.* (1991), 145 Ill. 2d 209, 221.

The Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*), which is before us today, was previously examined by our court in *Rehg v. Illinois Department of Revenue* (1992), 152 Ill. 2d 504. In *Rehg*, the Department of Revenue attempted to assess $213,675 in tax, penalties and interest under the Act against an individual who had pleaded guilty and been sentenced for manufacture or delivery of a controlled substance (Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1401(c)) after stealing approximately $300 worth of prescription drugs from his father's pharmacy. The individual blocked the assessment by obtaining a declaratory judgment from the circuit court that the Act was invalid because it violated the double jeopardy provisions of the fifth amendment to the United States Constitution (U.S. Const., amend. V) and article I, section 10, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 10). There, as here, the Department brought a direct appeal pursuant to Supreme Court Rule 302(a)(1) (134 Ill. 2d R. 302(a)(1)).

In reviewing whether the monetary sanctions imposed under the Act constituted a second punishment prohibited by the double jeopardy provisions of the Federal and State Constitutions, our court concluded in *Rehg* that the tax and penalties imposed by the statute were not, in the abstract, so severe as to render the sanction criminal rather than civil in nature. Accord-

ingly, the court reasoned that the Act did not trigger the constitutional protections afforded to a criminal defendant and was not unconstitutional on its face for failing to provide the constitutional safeguards that ordinarily accompany a criminal trial. (*Rehg*, 152 Ill. 2d at 513-20.) Because the sanction was civil rather than criminal, the court further concluded that proceedings to collect the tax and penalty did not offend the double jeopardy clause's prohibition against multiple prosecutions for the same offense. *Rehg*, 152 Ill. 2d at 521.

Although the court declined to find the Act facially invalid, it held that the Act might nevertheless be unconstitutional as applied in particular circumstances. The court based its analysis on *United States v. Halper* (1989), 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892, where the Federal government brought a criminal prosecution against a defendant for fraudulently overcharging Medicare in the amount of $585, and, after the defendant had been convicted and sentenced to prison and fined $5,000, it instituted a civil suit against him under the False Claims Act to obtain a civil sanction of more than $130,000. Based solely on the facts established by the defendant's criminal conviction, the trial court granted summary judgment in favor of the government in the civil proceeding. The court held, however, that because the penalty authorized by law had no rational relation to the government's actual loss plus costs in investigating and prosecuting the false Medicare claims, imposition of the full amount of the penalty would violate the double jeopardy clause of the fifth amendment. Accordingly, the court awarded the government only $16,000, a sum approximating the amount required to make it whole.

On direct appeal, the United States Supreme Court agreed with the trial court's approach. It held that a defendant who has already been punished in a criminal

trial may not be subjected to an additional civil sanction to the extent that the second sanction may not be fairly characterized as remedial, but only as a deterrent or retribution. (*Halper*, 490 U.S. at 448-49, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.) The Court opined that where a defendant has previously been subject to a criminal penalty and the State, in a subsequent proceeding, seeks a civil penalty that bears no rational relation to the goal of compensating the government for its loss, the defendant is entitled to an accounting of the government's damages and costs to determine if the penalty in fact constitutes a second punishment. (*Halper*, 490 U.S. at 449, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.) Although the Court vacated the trial court's judgment and remanded the cause for further proceedings, it did so only because it thought the government should be given an opportunity to demonstrate that the trial court's assessment of its injuries was erroneous. *Halper*, 490 U.S. at 452, 104 L. Ed. 2d at 504, 109 S. Ct. at 1904.

Following *Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892, this court held in *Rehg*, 152 Ill. 2d at 531, that the penalty portion of the Department's assessment, which in that particular case amounted to $168,000, appeared to be "so extreme and so divorced from the State's expenses as to constitute punishment within the meaning of the double jeopardy clause." As in *Halper*, however, the court reversed and remanded to give the State the opportunity to present evidence of its actual costs arising from the defendant's conduct. *Rehg*, 152 Ill. 2d at 531.

Since this court decided *Rehg*, 152 Ill. 2d 504, the United States Supreme Court has once again taken up the question of whether and under what circumstances a civil penalty may constitute punishment for double jeopardy purposes. In *Department of Revenue v. Kurth Ranch* (1994), 511 U.S. 767, 128 L. Ed. 2d 767, 114 S.

Ct. 1937, it held that a proceeding brought under Montana's Dangerous Drug Tax Act (Mont. Code Ann. §§ 15—25—101 through 15—25—123 (1987)) to collect a tax on the possession of drugs from defendants who had already been charged, convicted and sentenced on criminal charges involving the same drugs was the functional equivalent of a successive criminal prosecution. It therefore concluded that the tax violated the double jeopardy clause's prohibition against successive punishments for the same offense. *Kurth Ranch*, 511 U.S. at 784, 128 L. Ed. 2d at 781-82, 114 S. Ct. at 1948.

In reaching this conclusion, the Court in *Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937, differentiated tax statutes such as the one at issue here from the sort of civil penalties at issue in *Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892. The Court reasoned that tax statutes serve a purpose quite different from civil penalties and that employing the method used in *Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892, and followed by this court in *Rehg*, 152 Ill. 2d 504, would not work when determining whether a tax statute should be characterized as punishment for double jeopardy purposes. *Kurth Ranch*, 511 U.S. at 784, 128 L. Ed. 2d at 781, 114 S. Ct. at 1948.

The United States Supreme Court noted that a tax is not necessarily rendered punitive in the constitutional sense just because the tax rate is high and is intended to have some deterrent effect, as in the case of taxes on cigarettes and alcohol. (*Kurth Ranch*, 511 U.S. at 780, 128 L. Ed. 2d at 779, 114 S. Ct. at 1946.) The Court observed, however, that Montana's dangerous drug tax possessed certain characteristics that set it apart from most taxes. First, imposition of the tax was conditioned on the commission of a crime. Under the Montana law, only those who had been arrested for drug possession were subject to the tax. Second, by taxing illegal drug

possession, an activity that is completely forbidden, Montana accomplished no legitimate revenue-raising purpose that could not have been equally well served by increasing the fine a defendant would have to pay when he was convicted under Montana law of the underlying criminal offense. In this regard, the Court found it significant that that activity was being taxed by the same sovereign that had criminalized it. Finally, the tax was levied on goods that the taxpayer no longer possessed and could never have lawfully possessed or owned. *Kurth Ranch*, 511 U.S. at 781-84, 128 L. Ed. 2d at 779-81, 114 S. Ct. at 1947-48.

In the matter before us today, the circuit court found that our State's Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*) possessed the same essential features as the Montana statute invalidated in *Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937. It therefore held that the constitutional prohibition against subjecting a defendant to double jeopardy precluded the State from enforcing the Act against Wilson after it had already prosecuted and sentenced him on criminal charges involving the same contraband. Accordingly, it ordered the State to return to Wilson all sums it had seized from him pursuant to the Act.

On this appeal, the State contends that the circuit court erred in relying on *Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937, because the Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*) is distinguishable from the statute invalidated in that case. The primary difference, according to the State, is that, unlike Montana's law, the Illinois Act does not condition tax liability upon commission of a crime. The flaw in this argument is that it overlooks the plain language of the statute. Under the Act, the only persons liable for the tax are

"dealers" (Ill. Rev. Stat. 1989, ch. 120, par. 2155), and to be a "dealer" within the meaning of the statute, one must have carried out certain enumerated acts "in violation of the Illinois Controlled Substances Act [Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1100 *et seq.*] or the Cannabis Control Act [Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 701 *et seq.*]" (Ill. Rev. Stat. 1989, ch. 120, par. 2152), both of which are criminal statutes. Accordingly, by the terms of the Act, criminal conduct is a prerequisite to tax liability. Unless the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1100 *et seq.*) or the Cannabis Control Act (Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 701 *et seq.*) have been violated, no tax is due.

We note, moreover, it is not enough under the Act that a person is merely suspected or accused of having violated the drug laws. As we have indicated, the Act specifies that there must have been a violation of those statutes. As a matter of law, a person cannot be said to have violated a criminal statute within the meaning of the Act absent a trial and conviction. To hold otherwise would be tantamount to decreeing that the Department has the authority to supplant the jury and the criminal justice system. Under the Federal and State Constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8), departments of the executive branch have no such authority and cannot be granted such authority.

Because the Department of Revenue cannot determine whether a person is a "dealer" subject to the tax unless and until that person has been found guilty of the underlying criminal offense, the Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*) not only assumes that a crime has been committed, it also presupposes that the offending party has been arrested, charged and convicted. In this regard, the Act is therefore indistinguishable from the situation in *Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937.

In urging a contrary position, the State relies on the terms of section 12 of the Act (Ill. Rev. Stat. 1989, ch. 120, par. 2162). Although that provision does state that taxes become due and payable immediately upon acquisition or possession of the contraband by a dealer, that provision serves only to specify when tax liability attaches. The Department must still await an adjudication of guilt to determine whether a person constitutes a "dealer" within the meaning of the law before it can commence enforcement proceedings.

What this means, of course, is that by the time the Department can proceed against an individual, it will be too late for that individual to avoid incurring the statutory penalty plus interest, but that merely highlights the fundamentally punitive nature of this scheme. It also underscores another similarity with the Montana statute in *Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937, namely, that the Act taxes the possession of contraband that the taxpayer not only could never have lawfully owned, but which, as a practical matter, he will no longer even possess by the time the tax is levied, for the drugs will already have been confiscated by law enforcement authorities when they made the arrest for the underlying criminal offense.

Finally, the Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*) also parallels the Montana law in *Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937, in that it represents an effort by a sovereign to tax activity that the same sovereign has already forbidden completely under the criminal law. Although the State in this case attempts to imbue the law with some genuine revenue-raising function, basic economic analysis belies its position. If a legitimate revenue-raising measure is to work, the government must insure that the tax is not so onerous that the businesses subject to it cannot continue to

profit. That is so because if the business is killed off, there will be nothing left to tax and the revenue-raising opportunities will be lost. Yet, quashing the drug business is precisely what the Illinois drug tax would accomplish if it were universally enforced. Ultimately, that is the law's very purpose. While ending the commerce in illicit drugs should be given the highest priority, there is no point in entertaining the pretense that the tax scheme at issue here is actually supposed to be some kind of money-maker for the State. At the very least, we must acknowledge, as the United States Supreme Court did in *Kurth Ranch*, 511 U.S. at 782, 128 L. Ed. 2d at 780, 114 S. Ct. at 1947, that any legitimate revenue-raising purpose that might justify the tax could be equally well served by increasing the fine imposed upon conviction for the underlying offense.

In sum, all of the basic features that led the United States Supreme Court to differentiate the *Kurth Ranch* drug tax from standard tax assessments and to characterize it as a form of punishment for double jeopardy purposes are present here. Accordingly, we must conclude that the drug tax imposed on Wilson by the Department under the Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*) following his criminal prosecution was the functional equivalent of a successive criminal prosecution that placed Wilson in jeopardy a second time for the same offense. (*Kurth Ranch*, 511 U.S. at 784, 128 L. Ed. 2d at 782, 114 S. Ct. at 1948.) To the extent that this holding is inconsistent with this court's previous opinion in *Rehg v. Illinois Department of Revenue* (1992), 152 Ill. 2d 504, *Rehg* is hereby overruled.

For the foregoing reasons, the circuit court was correct in granting summary judgment in favor of Wilson and in ordering the Department to return to him all sums it had seized pursuant to the Cannabis and Con-

trolled Substances Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 2151 *et seq.*). The judgment of the circuit court is therefore affirmed.

*Affirmed.*