(No. 86104.

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lant, v. VERONICA FULLER, Appellee.

*Opinion filed July 1, 1999.*

RATHJE, J., specially concurring.
BILANDIC, J., dissenting.
McMORROW, J., joined by FREEMAN, C.J., also dissenting.

David R. Akemann, State's Attorney, of St. Charles (Norbert J. Goetten, Martin P. Moltz and Gregory L. Slovacek, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Jack Hildebrand, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Veronica Fuller, was charged in the circuit court of Kane County with filing a false report of a vehicle theft, a violation of section 4—103(a)(6) of the Illinois Vehicle Code (625 ILCS 5/4—103(a)(6) (West 1996)). Before trial, defendant moved to dismiss the charge, arguing that the potential penalty for that offense, a Class 2 felony (625 ILCS 5/4—103(b) (West 1996)), was "unconstitutional as applied to the defendant under the facts of this case." The trial judge agreed with the defendant and dismissed the charge. The State appealed that ruling to the appellate court (145 Ill. 2d R.

604(a)(1)), which, on its own motion, later transferred the cause to this court pursuant to Supreme Court Rules 365 and 603 (155 Ill. 2d R. 365; 134 Ill. 2d R. 603). We now reverse the judgment of the circuit court and remand the cause to that court for further proceedings.

The following facts are not in dispute here. On June 12, 1996, at approximately 3:20 a.m., defendant called the Carpentersville police to report that her former husband, Edward Fuller, had stolen her car. Edward was soon apprehended with the car and was arrested. At 5:30 that morning, defendant gave a written statement to the police in which she described the events surrounding the theft of her car. According to the statement, Edward came to defendant's home at approximately 3:15 a.m., entering through the front door. An order of protection had been issued against Edward, and defendant told him to leave before she called the police. Instead of leaving, however, Edward asked defendant whether he could use her car. Defendant said that he could not. Edward then requested money from the defendant, who replied that she had no money to give him. According to defendant's statement, Edward then took some money from defendant's purse, grabbed the car keys, and left, saying that he would return the car in 45 minutes. After Edward drove away, defendant called the police. Defendant concluded her statement by noting that after she called the police, an officer came to her home and had defendant sign a complaint against Edward.

Charges were eventually brought against Edward, and an investigator for the public defender's office, which was representing Edward, later interviewed the defendant about the preceding events. In a report dated April 8, 1997, the investigator said that, during the interview, the defendant told him that she had lied to the police about Edward's stealing her car. According to the investigator's report, the defendant "stated that she has

gone to the police station on numerous occasions to make complaints about Edward that were not true. [Defendant] stated that the reason she would report this false information was because she would get mad at Edward for various reasons and file false complaints against him to get back at him." The investigator's report further explained that the defendant reviewed her statement to the police from June 12, 1996, and told the investigator that "what was written in the statement was not true and that Edward never came to her apartment without permission and that Edward never took her car without permission." According to the investigator's report, the defendant now "simply wanted to tell the truth because it is not fair for Edward to be in jail for something that he did not do."

In June 1997, defendant was charged by indictment with filing a false report of a vehicle theft, a violation of section 4—103(a)(6) of the Illinois Vehicle Code (625 ILCS 5/4—103(a)(6) (West 1996)). Section 4—103(a)(6) provides that it is unlawful for "[a] person to knowingly make a false report of the theft or conversion of a vehicle to any police officer of the State." The offense is a Class 2 felony (625 ILCS 5/4—103(b) (West 1996)), punishable by three to seven years' imprisonment (730 ILCS 5/5—8—1(a)(5) (West 1996)) and, at the time relevant here, by a fine up to $10,000 (730 ILCS 5/5—9—1(a)(1) (West 1996)). As an alternative to incarceration, a period of probation may be imposed for the offense. 730 ILCS 5/5—5—3(c)(2) (West 1996).

The defendant later moved to dismiss the charge. In her motion, the defendant noted that under the disorderly conduct statute, section 26—1(a)(4) of the Criminal Code of 1961, it is a crime to knowingly make a false report to a police officer that "an offense has been committed." 720 ILCS 5/26—1(a)(4) (West 1996). At that time, a violation of section 26—1(a)(4) was a Class B

misdemeanor (720 ILCS 5/26—1(b) (West 1996)), punishable by a term of imprisonment of up to six months (730 ILCS 5/5—8—3(a)(2) (West 1996)). We note that the penalty for the offense has since been elevated, and it is now a Class 4 felony. See Pub. Act 90—456, eff. January 1, 1998, codified at 720 ILCS 5/26—1(a)(4) (West 1997 Supp.). In the motion to dismiss, the defendant asserted that "a person who makes a false report of a murder, rape, or of an armed hostage situation commits a Class B misdemeanor, while an angry wife who claims that her husband took her car without her permission faces the penalty of a Class 2 felony." The defendant argued that subjecting her to the penalty of a Class 2 felony, under the circumstances shown here, would violate her rights to due process and equal protection and, in addition, would violate the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The defendant asked the circuit judge to declare section 4—103(a)(6) unconstitutional "as applied to the defendant in this case."

During the hearing on the dismissal motion, defense counsel tendered to the court the statement the defendant had originally given to the police and the investigator's report discussed above. Defense counsel also stipulated that the defendant made a false report of a vehicle theft. In argument before the court, counsel noted that the defendant had been charged in another case with disorderly conduct for having falsely accused her former husband of rape; counsel observed that the potential punishment for that offense was less than the potential punishment for the present charge.

At the conclusion of the hearing, the trial judge stated:

"All right. Based upon the stipulations and case law, I am going to grant the motion to dismiss. I am sure the Appellate Court will give us a well-reasoned opinion."

The court also entered a written order, which provided, in its entirety:

"This case coming on to be heard for Defendant's Motion to Dismiss based on disproportionate penalties, the court having heard argument, the defendant's motion is granted."

The State appealed the circuit court's ruling to the appellate court. 145 Ill. 2d R. 604(a)(1). After the parties had filed their briefs, the appellate court entered an order transferring the cause to this court. The order stated:

"On the court's own motion, the appeal in General No. 2—97—1261 is hereby transferred to the Illinois Supreme Court pursuant to Supreme Court Rules 365 and 603.

Where, as here, the trial court rules that statutory penalties violate the proportionate penalties provision, the appeal is taken directly to the Supreme Court under Rule 603. See, *e.g.*, *People v. Davis*, 177 Ill. 2d 495, 497-98 (1997); *People v. Lewis*, 175 Ill. 2d 412, 414 (1996); *People v. Miller*, 171 Ill. 2d 330, 331 (1996). This is true even where the trial court's ruling employs an 'as applied' analysis. See *Miller*, 171 Ill. 2d at 331-33; see also *People v. Shephard*, 152 Ill. 2d 489, 493 (1992).

The clerk of the court is directed to transmit to our supreme court the record on appeal, the briefs, all other papers filed in this appeal, and this order of transfer."

We permitted the parties' appellate briefs to stand as their briefs before this court.

I

At the outset, we consider on our own motion our jurisdiction over the present appeal. Although the parties have not raised any question regarding this court's jurisdiction, it is appropriate that we consider the issue, given our independent duty as a reviewing court to consider our appellate jurisdiction. *Franson v. Micelli*, 172 Ill. 2d 352, 355 (1996); *Ferguson v. Riverside Medical Center*, 111 Ill. 2d 436, 440 (1985); *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984).

The appellate court concluded that jurisdiction

properly lies in this court pursuant to Supreme Court Rule 603 and, on that basis, transferred the cause according to Supreme Court Rule 365 (155 Ill. 2d R. 365 (authorizing courts of review to transfer cases that have been appealed to the wrong court)). Rule 603 provides that "[a]ppeals in criminal cases in which a statute of the United States or of this State has been held invalid *** shall lie directly to the Supreme Court as a matter of right." 134 Ill. 2d R. 603. Thus, we will assume jurisdiction over the present appeal only if the circuit judge held the statute involved here, section 4—103(a)(6) of the Vehicle Code, "invalid" as required by Rule 603.

The phrase "held invalid," found in Rule 603, also appears in Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)). See 134 Ill. 2d R. 603, Committee Comments, at 395 (noting that the provision in Rule 603 for direct appeal to the supreme court when a statute is held invalid is "the same provision" that appears in Rule 302). Rule 302(a) applies in civil cases and provides, in pertinent part, that "[a]ppeals from final judgments of circuit courts shall be taken directly to the Supreme Court (1) in cases in which a statute of the United States or of this State has been held invalid." 134 Ill. 2d R. 302(a). Because the two rules are similar in scope, effect, and purpose, we believe that case law interpreting Rule 302(a) is also pertinent in this criminal appeal.

In *Rehg v. Illinois Department of Revenue*, 152 Ill. 2d 504 (1992), *overruled in part on other grounds, Wilson v. Department of Revenue*, 169 Ill. 2d 306 (1996), this court drew a distinction, for jurisdictional purposes, between a circuit court order that holds that a statute is incapable of any constitutional application and, hence, is invalid "on its face," and an order that holds that a statute is unconstitutional "as applied" in a particular case. *Rehg* held that, under Rule 302(a), this court has no jurisdiction over a circuit court order that merely holds a statute

unconstitutional "as applied." Such an order, *Rehg* explained, "does not declare a statute unconstitutional; it simply declares that application of that statute would violate a particular defendant's constitutional rights. An appeal from such an order is properly brought in the appellate court pursuant to Rule 301 (134 Ill. 2d R. 301)." *Rehg*, 152 Ill. 2d at 508-09.

Later, in *In re Marriage of Lappe*, 176 Ill. 2d 414 (1997), this court held that, even in an "as applied" case, jurisdiction may be proper under Rule 302(a) if the circuit court "in effect" holds a statute unconstitutional with respect to an identifiable category or group of individuals. *Lappe*, 176 Ill. 2d at 420-22; see also *Lumpkin v. Cassidy*, 184 Ill. 2d 116 (1998). By determining that jurisdiction may be found in "as applied" rulings that effectively embrace more than an individual litigant, *Lappe* substantially qualified the holding of *Rehg*. After *Lappe*, the "as applied" rule of *Rehg* would apparently preclude direct review under Rule 302(a) only when the scope or effect of the circuit court order is truly limited to a single litigant.

In the present case, the trial judge ruled that the statute challenged here, section 4—103(a)(6) of the Vehicle Code, was unconstitutional "as applied" to this defendant. Because the record in this case is relatively meager, and the judge below made the ruling without much elaboration, there is some difficulty in identifying what, if any, category of persons would be affected by the ruling. There is no clear category of persons affected by this ruling, unless it consists of persons who falsely report vehicle thefts in retaliation against the supposed thieves. Thus, the facts of this case do not easily fall within the rationale of *Lappe*. Consequently, under *Rehg*, this court would not have jurisdiction to consider the State's appeal.

*Lappe* substantially undermined the logic and ratio-

nale of *Rehg*, and we now conclude that *Rehg*, as modified by *Lappe*, no longer provides an effective means of determining this court's jurisdiction under Rule 302(a) or Rule 603. We see no principled reason to deny a direct appeal from the circuit court to this court when the "as applied" ruling affects a single defendant, as *Rehg* would require, but to allow a direct appeal when the "as applied" ruling affects only a small or indeterminate number of persons, as *Lappe* permits (see, *e.g.*, *Lumpkin*, 184 Ill. 2d 116). Accordingly, to the extent that *Rehg* would preclude our assumption of jurisdiction in this case, that decision is overruled.

## II

As a preliminary matter, we note the presumption of validity that attaches to legislation, including enactments that define offenses and prescribe penalties. *People v. Dunigan*, 165 Ill. 2d 235, 244 (1995). A party who is challenging the constitutionality of a statute has the burden of establishing its invalidity. *People v. Burpo*, 164 Ill. 2d 261, 264 (1995). Accordingly, "[i]t is a court's duty to construe a statute so as to affirm the statute's constitutionality and validity, if reasonably possible." *People v. Shephard*, 152 Ill. 2d 489, 499 (1992).

In support of the trial court's ruling, the defendant argues that, under the facts of this case, imposing the penalty of a Class 2 felony for falsely reporting a vehicle theft would violate article I, section 11, of the Illinois Constitution. Commonly referred to as the proportionate penalties clause, section 11 of article I provides, in pertinent part, "All penalties shall be determined *** according to the seriousness of the offense ***." Ill. Const. 1970, art. I, § 11.

This court has explained that review under the proportionate penalties clause may take three different forms:

"First, the proportionate penalties clause is violated where

the punishment for a particular offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. [Citations.] Second, the proportionate penalties clause is violated where similar offenses are compared and conduct that creates a less serious threat to the public health and safety is punished more harshly. [Citations.] Third, the proportionate penalties clause is violated where identical offenses are given different sentences. [Citations.]" *People v. Davis*, 177 Ill. 2d 495, 503-04 (1977).

See also *People v. Lombardi*, 184 Ill. 2d 462 (1998).

The defendant contends that the Class 2 felony penalty for the charged offense is, in the circumstances shown here, disproportionate under the first and second forms of analysis listed above; she makes no claim under the third form of analysis that the charged offense is identical with another offense that carries a less severe sanction.

The defendant's contention that a Class 2 felony penalty is disproportionate under the first form of proportionality review need not detain us long. This court has previously explained that "the constitutional command that 'penalties shall be proportioned to the nature of the offense' would justify interference with the legislative judgment only if the punishment was 'cruel,' 'degrading' or 'so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " *People v. Gonzales*, 25 Ill. 2d 235, 240 (1962), quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 421 (1894). The false report made in the present case subjected an innocent person to the uncertainty and expense of being erroneously accused of a serious crime, and we cannot say that classification of the defendant's offense as a Class 2 felony is disproportionate to the conduct involved. See *People v. Farmer*, 165 Ill. 2d 194, 210 (1995) (upholding sentencing provisions imposing felony penalties for possession of contraband in penal institution); *cf. People v. Morris*, 136 Ill. 2d

157, 167-68 (1990) (Class 2 felony penalty for knowingly possessing an altered temporary registration permit for a vehicle one owns held disproportionate, in part because alteration did not affect any third party).

We next consider whether the classification of the defendant's offense as a Class 2 felony is disproportionate under the second form of analysis listed above, involving a comparison of the charged offense with similar, but not identical, offenses. The offenses to which the defendant would compare the present charge are found in the disorderly conduct statute, section 26—1 of the Criminal Code of 1961 (720 ILCS 5/26—1 (West 1996)). In support of this contention, the defendant argues that several offenses found in the disorderly conduct provisions are more serious than her offense of falsely reporting a vehicle theft, but that the penalty for each of those offenses is less onerous than the Class 2 felony penalty for the present offense. For example, the defendant cites section 26—1(a)(4), which prohibits knowingly making a false report to a police officer that "an offense has been committed." 720 ILCS 5/26—1(a)(4) (West 1996). A violation of section 26—1(a)(4) was, at the time relevant here, a Class B misdemeanor (720 ILCS 5/26—1(b) (West 1996)); we note that the legislature has since reclassified the offense, making it a Class 4 felony. According to the defendant, if she had falsely reported to the police that someone had committed a murder, rape, arson, or other crime more serious than stealing an automobile, she would have faced only the penalty for a Class B misdemeanor, rather than that for a Class 2 felony. The defendant also cites the offense of knowingly reporting a false bomb threat, classified under the disorderly conduct statute as a Class 4 felony (720 ILCS 5/26—1(a)(3), (b) (West 1996)). The defendant contends that the punishment that may be imposed for the offense charged here violates the proportionate penalties clause because, when compared

with the preceding offenses in the disorderly conduct statute, the present charge imposes a more severe penalty on conduct that creates a less serious risk to public health and safety. We do not agree that the present statute violates the proportionate penalties clause.

This court has previously explained that, before different offenses and their penalties may properly be evaluated under comparative proportionality review, it must first be shown that the statutory purposes of the offenses are similar or related. *Lombardi*, 184 Ill. 2d at 475-76; *Davis*, 177 Ill. 2d at 506. This preliminary examination of statutory purposes is designed to afford proper deference to the legislature's constitutional role in determining penalties for criminal conduct. "By declining to compare the penalties of offenses with distinct purposes, we avoid making unnecessary subjective judgments as to the seriousness of offenses or the severity of penalties, thereby minimizing the risk of violating separation of powers principles." *Lombardi*, 184 Ill. 2d at 480. Necessarily, our focus here is on the legislature's purpose in its classification of the challenged offense, rather than on the individual offender's motive in his or her commission of the underlying misconduct.

In the case at bar, the defendant seeks to compare, for purposes of proportionality review, the offenses of falsely reporting a vehicle theft and disorderly conduct. We believe, however, that these crimes have distinct and unrelated statutory purposes and that a comparative proportionality analysis is therefore not appropriate.

The false report of a vehicle theft statute is located in the portion of the Illinois Vehicle Code relating to antitheft laws. 625 ILCS 5/4—100 through 4—109 (West 1996). Grouped under this broad rubric are a number of offenses involving motor vehicles, including possession of a stolen vehicle (625 ILCS 5/4—103(a)(1) (West 1996)), alteration of a vehicle identification number (625 ILCS

5/4—103(a)(2) (West 1996)), and vehicle theft conspiracy (625 ILCS 5/4—103.1 (West 1996)), as well as offenses relating to possession of title and registration (625 ILCS 5/4—104 (West 1996); see *People v. Tolliver*, 147 Ill. 2d 397 (1992)). This court has held that the antitheft provisions of the Vehicle Code serve several functions, including protecting " 'automobile owners against theft' " and protecting " 'the general public against the commission of crimes involving stolen automobiles.' " *People v. Morris*, 136 Ill. 2d 157, 162 (1990), quoting *People v. One 1979 Pontiac Grand Prix Automobile*, 89 Ill. 2d 506, 510 (1982). This court has also observed that the antitheft provisions seek to prevent "fraudulent conduct involving vehicles" as well as "theft-related, 'chop-shop' or organized criminal activity." *People v. Johns*, 153 Ill. 2d 436, 444, 446 (1992). It is apparent that the offense charged here, falsely reporting a vehicle theft, falls within the broad purposes of the Vehicle Code's antitheft measures.

In contrast to the antitheft provisions of the Vehicle Code, the disorderly conduct statute is not concerned with motor vehicle theft or other criminal activities involving stolen vehicles. Instead, the disorderly conduct statute is intended to prevent activities performed in an unreasonable manner that " ' "would tend to disturb, alarm or provoke others. The emphasis is on the unreasonableness of the conduct and its tendency to disturb." ' " *In re B.C.*, 176 Ill. 2d 536, 548 (1997), quoting *People v. Raby*, 40 Ill. 2d 392, 397 (1968), quoting Ill. Ann. Stat., ch. 38, par. 26—1, Committee Comments— 1961 (Smith-Hurd).

It should be clear from the preceding discussion that the purposes of the two statutes the defendant seeks to compare are distinct and unrelated. The disorderly conduct statute has as its primary goal the protection of the right "not to be molested or harassed, either mentally

or physically, without justification." 720 ILCS Ann. 5/26—1, Committee Comments—1961, at 337 (Smith-Hurd 1993). In contrast, the false report of a vehicle theft statute is one of a group of provisions that are broadly designed to reduce fraud or criminal activity involving motor vehicles. Because the purposes of these provisions are distinct, "we presume that the legislature considered different factors in establishing the penalties for these offenses and defer to its judgment in doing so." *Lombardi*, 184 Ill. 2d at 480. For these reasons, we conclude that comparative proportionality review of disorderly conduct and falsely reporting a vehicle theft is not warranted.

### III

The defendant makes the alternative argument that, under the facts of this case, prosecuting her for a Class 2 felony for falsely reporting a vehicle theft violates the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Citing *People v. Morris*, 136 Ill. 2d 157 (1990), the defendant contends that, in the circumstances present here, the classification of the offense as a Class 2 felony does not bear a rational relationship to a legitimate state interest and thus violates her right to substantive due process.

The legislature's power to establish criminal penalties, while broad, is subject to the limitation that a person's liberty may not be deprived without due process of law. *People v. Johns*, 153 Ill. 2d 436, 444 (1992). "This court has interpreted the due process guarantee of section 2 to require that penalty provisions be reasonably designed to remedy the particular evil which the legislature has selected for treatment under the statute in question." *People v. Steppan*, 105 Ill. 2d 310, 319 (1985). The focus of this inquiry is "on the purposes and objectives of the enactment in question." *Johns*, 153 Ill. 2d at 445. Because the statute at issue in this appeal does not

involve a fundamental right, it "will be upheld if it bears a rational relation to a legitimate legislative purpose and is neither arbitrary nor discriminatory." *People v. Hamm*, 149 Ill. 2d 201, 216 (1992).

In support of the present argument, the defendant relies primarily on *People v. Morris*, 136 Ill. 2d 157 (1990). In *Morris*, the defendant was convicted of knowingly possessing an altered temporary registration permit, a violation of section 4—104(a)(3) of the Illinois Vehicle Code and a Class 2 felony (Ill. Rev. Stat. 1987, ch. 95½, pars. 4—104(a)(3), (b)(2)). The defendant in that case had altered the expiration date on the licensed-applied-for sticker on his vehicle. In a post-judgment motion, the defendant argued that, as applied to the facts in his case, classification of the offense as a Class 2 felony violated due process and the proportionate penalties clause. The trial judge agreed with the defendant and granted the motion. On direct review, this court noted that the offense of knowingly possessing an altered temporary registration permit was part of the antitheft provisions of the Vehicle Code, whose purpose " 'is to protect automobile owners against theft and to protect the general public against the commission of crimes involving stolen automobiles.' " *Morris*, 136 Ill. 2d at 162, quoting *People v. One 1979 Pontiac Grand Prix Automobile*, 89 Ill. 2d 506, 510 (1982). *Morris* observed that the vehicle involved was the defendant's own, and that no evidence showed that the defendant's conduct had "contributed in any way to any vehicle theft-related crime." *Morris*, 136 Ill. 2d at 162. The *Morris* court concluded:

> "A Class 2 penalty for a person who alters a temporary registration permit for a vehicle which he or she owns or to which he or she is legally entitled is not reasonably designed to protect automobile owners against theft, nor is it reasonably designed to protect the general public against the commission of crimes involving stolen motor vehicles.

Such a penalty is violative of the due process clause of our constitution, and may not stand." *Morris*, 136 Ill. 2d at 162.

A similar result was reached in *People v. Hamm*, 149 Ill. 2d 201 (1992). The defendants in *Hamm* were charged with a number of offenses, including failing to have a license tag properly affixed to a fishing device and failing to have a fishing license in their possession and available for immediate inspection while fishing. Because the defendants were involved in commercial fishing, and because they caught over $300 worth of fish, those two offenses were elevated to Class 3 felonies under section 2.4 of the Fish Code of 1971 (Ill. Rev. Stat. 1989, ch. 56, par. 2.4(a)). The defendants filed motions to dismiss the felony charges, arguing that section 2.4 was unconstitutional on a number of grounds. The trial judge granted the defendants' motions, and a direct appeal to this court followed.

Addressing the defendants' due process challenge to section 2.4, this court observed that the purpose of section 2.4 was "to prevent the illegal widespread destruction of natural resources," including "the illegal taking of great amounts of fish from Illinois waters." *Hamm*, 149 Ill. 2d at 217-18. This court further noted that, to deter and punish conduct that assisted or resulted in the illegal widespread destruction of natural resources, the legislature had elevated certain minor offenses to Class 3 felonies when the offenses were committed during commercial fishing and when over $300 worth of fish was taken. The court concluded that failing to have a license tag on a net and failing to have a license in one's immediate possession while fishing did not "assist[ ] or result[ ] in the illegal widespread destruction of the State's resources." *Hamm*, 149 Ill. 2d at 218. The court stated:

"We conclude that a Class 3 felony penalty for a person otherwise legally commercially fishing and taking over $300

18

worth of fish, but who fails to have a tag on his net as proof that the net is licensed, or fails to have in his immediate possession his fishing license to prove he is licensed, is not reasonably designed to protect the citizens of Illinois from depleting our natural resources. Such a penalty violates the due process clause of the Illinois Constitution and cannot stand." *Hamm*, 149 Ill. 2d at 218.

The defendant contends that a similar result must obtain here. We believe that the present matter is fundamentally different from *Hamm* and *Morris*, cases in which this court found the classification of certain offenses to violate due process. In *Hamm*, the defendants simply failed to have with them evidence of their compliance with certain requirements of the Fish Code; their underlying conduct, with respect to the offenses found unconstitutional, was not illegal. See *Hamm*, 149 Ill. 2d at 217-18. In *Morris*, the defendant had altered his own license-applied-for sticker. In both cases, the prohibited offenses were essentially victimless crimes. Here, in contrast, the defendant's false report did claim a victim: her former husband, who undoubtedly suffered some harm in having been falsely accused of auto theft.

The defendant emphasizes, however, that her conduct in the present case was intended only to harass her former husband, and that her actions did not implicate the purposes that underlie the Vehicle Code's antitheft measures. According to the defendant, imposing the penalty of a Class 2 felony in these circumstances does nothing to advance the state's interest in combating fraudulent conduct or other criminal activity involving stolen vehicles.

We are unable to conclude that application of that provision in the circumstances shown here violates the defendant's right to due process under article I, section 2, of the Illinois Constitution. In *People v. Hickman*, 163 Ill. 2d 250 (1994), this court described the deference

normally paid to legislative determinations of this nature. The court explained:

> "Our constitution empowers the legislature to declare and define criminal conduct and to determine the type and extent of punishment for it. The legislature, as an institution, is more aware than the courts of the evils confronting our society and, therefore, is more capable of gauging the seriousness of various offenses. Accordingly, although [the due process and proportionate penalties clauses] of our constitution's bill of rights restrain somewhat the powers of the legislature to establish criminal penalties, courts are reluctant to invalidate penalties that the legislature has prescribed. [Citation.]" *Hickman*, 163 Ill. 2d at 259.

We agree with the State that the defendant's reasons for filing the false report may be relevant to the determination of the particular sentence she might receive for her misconduct, but that her motives do not render the classification of her offense unconstitutional as applied to her. As we noted earlier, in discussing the defendant's argument under the first form of proportionality review— whether the punishment for the crime is "cruel, degrading, or so wrongly disproportionate to the offense as to shock the moral sense of the community" (*People v. Davis*, 177 Ill. 2d 495, 503 (1997))—the defendant's actions exposed an innocent person to the uncertainty and expense that will result from being falsely accused of a crime. We do not believe that the defendant's motives for making that false accusation invalidate the legislature's determination that her offense may be categorized as a Class 2 felony.

* * *

For the reasons stated, the judgment of the circuit court of Kane County is reversed, and the cause is remanded to that court for further proceedings.

*Reversed and remanded.*

JUSTICE RATHJE, specially concurring:

I agree entirely with the majority's conclusion that the penalty for violating section 4—103(a)(6) of the Illinois Vehicle Code (625 ILCS 5/4—103(a)(6) (West 1996)) is not unconstitutional as applied. I further agree that we have jurisdiction over this matter. I write separately, however, because the majority's jurisdictional analysis, with all due respect, is much ado about nothing.

Inexplicably, the majority sets its sights upon rehabilitating this court's Rule 302(a) jurisprudence, when the relevant rule—Rule 603—already permits this court to review "as applied" rulings on direct review. To see this, one need look no further than the two cases cited by the appellate court, when it entered its order transferring this action to this court. In its order the appellate court recognized that in *People v. Miller*, 171 Ill. 2d 330, 331-33 (1996), and *People v. Shephard*, 152 Ill. 2d 489, 493 (1992), this court exercised jurisdiction over direct appeals from a trial court order finding a statute unconstitutional as applied.[1] See also *People v. Morris*, 136 Ill. 2d 157, 160-61 (1990) (recognizing that the issue on appeal was "whether the penalty *** is constitutional, as applied in this case"); *People v. M.A.*, 124 Ill. 2d 135, 138 (1988) ("[b]ecause the statute was declared unconstitutional as applied, this case is here on direct appeal by the State"); *People v. Geever*, 122 Ill. 2d 313, 315 (1988) (stating that the trial court had found a provision "unconstitutional as applied to the defendants" and that "[t]he State [citation], under our Rule 603 [citation], directly appealed the dismissals to this court"). In each of these

---

[1]Curiously, *Shephard*, in which this court exercised Rule 603 jurisdiction in an "as applied" action, was announced on the same day as and immediately precedes in the official reporter *Rehg v. Illinois Department of Revenue*, 152 Ill. 2d 504 (1992), in which we held that, under Rule 302(a), appeals in "as applied" actions are *not* appealed directly to this court, but are rather "properly brought in the appellate court." *Rehg*, 152 Ill. 2d at 509.

cases we exercised Rule 603 jurisdiction over "as applied" rulings.

Given our repeated willingness to consider "as applied" rulings under Rule 603, I question both the relevance and the utility of the majority's Rule 302(a) discussion. To be sure, overruling *Rehg* will ensure that this court's jurisdictional jurisprudence is uniform and consistent. Nevertheless, the majority wields a meat cleaver when not even a scalpel is called for.

JUSTICE BILANDIC, dissenting:

This court has no jurisdiction to hear the State's appeal. This appeal should therefore be dismissed, and the cause should be transferred to the appellate court.

In *Rehg v. Illinois Department of Revenue*, 152 Ill. 2d 504, 508-09 (1992), this court noted that a circuit court order holding *only* that a statute is unconstitutional "as applied" in a particular case is not directly appealable to this court under Supreme Court Rule 302(a)(1). This statement was derived from Rule 302(a)(1)'s plain language, which states that this court has direct appellate jurisdiction over those cases in which a circuit court has declared a statute "invalid." We explained that if a statute has truly been held unconstitutional only "as applied" to a single litigant, then the statute remains valid as to all others. Rule 302(a)(1) is therefore not implicated.

In *Rehg*, the circuit court's order declared that "the Tax Act as applied to the plaintiff Timothy Rehg violates the 5th Amendment of the United States Constitution and Article 1 Section 10 of the Illinois Constitution." See *Rehg*, 152 Ill. 2d at 508-09. We found, however, that a close reading of the circuit court's order revealed that the circuit court also declared the statute unconstitutional on its face, and that jurisdiction in this court was therefore proper under Rule 302(a)(1). *Rehg*, 152 Ill. 2d at 509.

Subsequently, in *In re Marriage of Lappe*, 176 Ill. 2d

414, 420-22 (1997), this court explained that *Rehg* is subject to an important qualification. At issue in *Lappe* were certain provisions of the Public Aid Code that allowed the Illinois Department of Public Aid to provide child support enforcement services to individuals who were not recipients of public financial aid. See 305 ILCS 5/10—1, 10—10 (West 1994). The circuit court found that the father in the case, the proposed recipient of the child support enforcement services, made $40,000 per year and was capable of pursuing such services without public financial assistance. The circuit court declared that the statutory provisions "would lead to an unconstitutional result in the instant case," in that the provisions violated the Illinois Constitution's requirement that public funds be used only for public purposes (Ill. Const. 1970, art. VIII, § 1). See *Lappe*, 176 Ill. 2d at 419. According to the circuit court, no public purpose justified the use of state funds to provide a lawyer for a parent who makes $40,000 a year. *Lappe*, 176 Ill. 2d at 419.

This court in *Lappe* determined that it had jurisdiction over the case pursuant to Rule 302(a)(1), notwithstanding the circuit court's "as applied" language. We explained that our precedent has established that this court has the responsibility to look to the effect of the circuit court's order to determine whether the order actually declared the statutory provisions unconstitutional on their face. *Lappe*, 176 Ill. 2d at 420, citing *Doe v. Gainer*, 162 Ill. 2d 15 (1994). This, of course, is a difficult task in light of the cursory nature of such an order. Nevertheless, because this court has a limited amount of time and resources, we must be able to decline to hear those rulings that are not publicly significant. If the effect of the circuit court's order is to declare the statute unconstitutional on its face, thereby raising an issue of pressing public importance, then this court's direct appellate review should be invoked. In contrast, a circuit court or-

der which holds a statute unconstitutional as applied *only* to a single litigant does not warrant bypassing the normal appellate process.

In *Lappe*, this court observed that the circuit court had ruled the statutory provisions unconstitutional because the proposed recipient of the child enforcement services had the financial ability to pursue enforcement without public financial assistance. Accordingly, the circuit court effectively declared the provisions unconstitutional not only as applied to the father in the case, but also as applied to an entire group of individuals, *i.e.*, those who are financially capable of pursuing child support on their own. Thus, the circuit court effectively declared the provisions unconstitutional on their face, and this court had jurisdiction over the case pursuant to Rule 302(a)(1). *Lappe*, 176 Ill. 2d at 421-22.

Here, the record reveals that the circuit court truly held section 4—103(a)(6) of the Vehicle Code unconstitutional only "as applied" to this defendant. Therefore, in accordance with *Rehg*, the circuit court's order is not directly appealable to this court. In contrast to *Lappe*, nothing in the record of this case suggests that the circuit court in effect held the false report of a vehicle theft statute unconstitutional on its face. The circuit court's order is thus not directly appealable pursuant to the qualification set forth in *Lappe*.

Today, instead of applying this court's precedent, the majority holds that "to the extent that *Rehg* would preclude our assumption of jurisdiction in this case, that decision is overruled." In doing so, the majority has ignored the doctrine of *stare decisis*. Once a majority of this court has established a principle of law, *stare decisis* dictates that the principle should not be disregarded simply because some members of the court disagree or have changed their minds. "The doctrine of *stare decisis* is the means by which courts ensure that the law will

not merely change erratically, but will develop in a principled and intelligible fashion. *Stare decisis* permits society to presume that fundamental principles are established in the law rather than in the proclivities of individuals." *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994). The majority's decision fails to honor the principles underlying the doctrine of *stare decisis*.

I would adhere to *Rehg* and *Lappe* and hold that this court has no jurisdiction to hear the State's appeal. For this reason, I respectfully dissent.

JUSTICE McMORROW, also dissenting:

The majority today overrules *Rehg v. Illinois Department of Revenue*, 152 Ill. 2d 504 (1992), in order to assume jurisdiction over the instant appeal. Now, every circuit court decision, irrespective of how limited in public importance or general applicability, may be appealed directly to this court under Rule 302(a)(1) or Rule 603, so long as the decision is couched in terms of holding a statute unconstitutional as applied. This result is fundamentally at odds with the language, purpose and history of Rule 302(a)(1) and Rule 603. Accordingly, I dissent.

I

Rule 302(a) and Rule 603 govern this court's mandatory direct appellate jurisdiction in civil and criminal cases. Both rules provide, in pertinent part, that appeals shall lie directly to this court from the circuit courts in cases "in which a statute of the United States or of this State has been held invalid." 134 Ill. 2d Rs. 302(a)(1), 603.

In *Rehg v. Illinois Department of Revenue*, 152 Ill. 2d 504 (1992), this court examined the language of Rule

302(a)(1)[2] and concluded that the rule granted direct appellate jurisdiction in this court only in those cases in which the circuit court held a statute unconstitutional "on its face." According to *Rehg*, when a statute was held unconstitutional "as applied" it was not "held invalid" within the meaning of Rule 302(a)(1) and, hence, jurisdiction did not lie in this court. As the *Rehg* court explained, a circuit court order holding a statute unconstitutional as applied "does not declare a statute unconstitutional; it simply declares that application of that statute would violate a particular defendant's constitutional rights. An appeal from such an order is properly brought in the appellate court pursuant to Rule 301 (134 Ill. 2d R. 301)." *Rehg*, 152 Ill. 2d at 508-09; see also 1 N. Singer, Sutherland on Statutory Construction § 2.06 (5th ed. 1994) (when a statute is declared invalid as applied "it is only the implementing action which purports to apply the legislation and not the provision itself which is invalid").

The holding of *Rehg* was based on the language of Rule 302(a)(1), specifically, the meaning of the phrase "held invalid." However, a brief review of the history of Rule 302(a), and the constitutional framework in which the rule arose, shows that the decision in *Rehg* also fully comported with the purpose behind Rule 302(a).

Prior to 1971, this court's mandatory direct appellate jurisdiction was governed by constitution, under the Judicial Article of 1964 (Ill. Const. 1870, art. VI (amended 1964)). The Judicial Article of 1964 provided for direct appeal from final judgments of the circuit courts in several different types of cases, including revenue cases, *habeas corpus* cases, capital cases, and cases involving a question arising under the federal or state constitution.

---

[2]I agree with the majority that the case law interpreting Rule 302(a)(1) should be read in conjunction with Rule 603. See *People v. Selby*, 298 Ill. App. 3d 605, 609-11 (1998).

Ill. Const. 1870, art. VI, § 5 (amended 1964); see generally G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 339-43 (1969) (discussing the history of this court's jurisdiction under the Illinois constitutions).

With the adoption of the new constitution in 1970, this court's mandatory appellate jurisdiction was eliminated in all cases except those in which a sentence of death is imposed. Ill. Const. 1970, art. VI, § 4(b). This delineation was done in a deliberate attempt to model this court's jurisdiction along the lines of the jurisdiction of the United States Supreme Court. The reasoning was explained by Chief Justice Underwood, whose remarks were noted during the 1970 constitutional convention:

> "The supreme court of Illinois is the state court of last resort. Its members ought to be able to concentrate their time and efforts upon those cases which are of major importance to the inhabitants of this state, upon cases which involve novel questions of law, or upon those questions or cases in which the appellate courts of this state are in disagreement.
>
>            * * *
>
> *** [O]nly by giving discretion to our court to select the cases which it must hear can our court function as effectively and efficiently as it should." 2 Record of Proceedings, Sixth Illinois Constitutional Convention 691 (statements of Representative Fay).

Notably, a proposal to require this court to accept direct appellate jurisdiction " 'in cases involving a question arising under the Constitution of United States *or this state'* " was defeated. (Emphasis added.) 2 Record of Proceedings, Sixth Illinois Constitutional Convention 753 (statement of Representative Friedrich).

The 1970 Constitution grants this court the authority to provide by rule for appeals in cases other than those in which a sentence of death has been imposed. Ill. Const. 1970, art. VI, § 4(b). Rule 302(a) and Rule 603 were promulgated under this authority. After the adoption of the 1970 Constitution, Rule 302(a) provided for

mandatory direct appellate jurisdiction in cases holding a statute invalid and in proceedings to review orders of the Industrial Commission. 50 Ill. 2d R. 302(a). Direct appeals in Industrial Commission cases were eliminated in 1984. See *Yellow Cab Co. v. Jones*, 108 Ill. 2d 330 (1985). Today, direct appellate review is available under Rule 302(a) only when a statute has been held invalid, or in proceedings commenced under Rule 21(c).[3] Rule 302(a), like the jurisdictional provisions of the constitution,

> "is based upon the principle that the Supreme Court of Illinois should have a role in the State judicial system similar to that of the Supreme Court of the United States in the Federal System; that is, the Supreme Court should be the forum for the decision of *important questions which affect the public interest* or are otherwise of *importance and general applicability* and should exercise supervisory jurisdiction over the State judicial system. Accordingly, the Supreme Court's mandatory direct appellate jurisdiction is reduced and its appellate jurisdiction is made largely discretionary." (Emphasis added.) 134 Ill. 2d R. 302(a), Committee Comments, at 233.

Viewed against the historical and constitutional background of Rule 302(a), the force and logic of *Rehg* becomes clear. Rule 302(a) is based on the premise that some types of cases are of such pressing importance that, upon review, they should bypass the normal appellate process and proceed directly to this court. *Rehg* determined that circuit court decisions holding a statute facially unconstitutional rise to this level of importance. Implicitly, *Rehg* recognized that holding a statute facially invalid attacks the power of the legislature to enact the statutory provision itself, and therefore, that as a general matter, such a holding will be of sufficient importance and general applicability to warrant direct review in this

---

[3]Rule 21(c) concerns proceedings to compel compliance with administrative orders of a chief circuit judge. 134 Ill. 2d R. 21(c). There are no published decisions addressing this provision.

court. *Rehg* also recognized, however, that it is illogical to extend the reach of Rule 302(a)(1) to decisions of the circuit courts holding a statute unconstitutional as applied. This is because, generally speaking, whether a statute is unconstitutional as applied in a particular case is a matter of interest primarily to the litigants, and not to the public at large. See, *e.g.*, *First National Bank & Trust Co. v. City of Evanston*, 30 Ill. 2d 479 (1964) (under the Judicial Article of 1964, a circuit court holding that a zoning ordinance was unconstitutional as applied to a single parcel of property did not present a substantial constitutional question meriting direct review in the supreme court); see also *Dahnke-Walker Milling Co. v. Bondurant*, 257 U.S. 282, 293-303, 66 L. Ed. 239, 245-50, 42 S. Ct. 106, 109-13 (1921) (Brandeis, J., dissenting).

The instant case aptly illustrates why *Rehg* was correct to draw a jurisdictional distinction between a circuit court order that holds a statute unconstitutional on its face and one that holds a statute unconstitutional as applied. The circuit court in the case at bar held that the false report of a vehicle theft statute (625 ILCS 5/4—103(a)(6) (West 1996)) was unconstitutional as applied to the defendant under the facts of this case. While this ruling was of obvious significance to the defendant, there is nothing about the decision which justifies forgoing the normal appellate process and invoking this court's direct appellate review. No novel claims are raised by the circuit court's decision, nor are any issues of pressing public importance presented. Indeed, the circuit court's decision is one which has no "general applicability" at all. Because of the cursory nature of the circuit court's ruling, the impact of the decision is limited strictly to the instant defendant. In light of these circumstances, there is no basis for this appeal to be before this court at this time. The appeal properly belongs in the appellate court. If *Rehg* had been followed in this case, that is where the appeal would be.

Disregarding the wisdom and utility of the *Rehg* decision, the majority concludes that *Rehg* must be overruled in light of this court's recent decision in *In re Marriage of Lappe*, 176 Ill. 2d 414 (1997). The majority reasons that *Lappe* has "substantially undermined the logic and rationale of *Rehg*" to the extent that *Rehg* "no longer provides an effective means of determining this court's jurisdiction under Rule 302(a) or Rule 603." 187 Ill. 2d at 9-10. I do not find this reasoning persuasive.

*Lappe* held that the jurisdictional rule of *Rehg* is not absolute, and that certain decisions of the circuit court holding a statute unconstitutional as applied may be appealed directly to this court. Specifically, *Lappe* held that when a circuit court "in effect" holds a statute unconstitutional not only as applied to a single litigant, but also as applied to an entire category of individuals, then jurisdiction could lie under Rule 302(a)(1). *Lappe*, 176 Ill. 2d at 420-22. *Lappe* was sharply criticized at the time it was adopted as being incompatible with *Rehg* and with creating an ill-defined and unworkable standard for determining jurisdiction. *Lappe*, 176 Ill. 2d at 439 (Freeman, J., dissenting, joined by McMorrow, J.). The majority agrees that *Lappe* is at odds with the "logic and rationale" of *Rehg*, but then draws the wrong conclusion from this fact. If *Lappe* "substantially undermined" the reasoning of *Rehg* then the proper course of action is to overrule *Lappe*, not *Rehg*. Moreover, even if one accepts that *Lappe* should, or must, remain the law, that fact would not justify overruling the general jurisdictional rule set forth in *Rehg*. Simply put, if the choice of interpretations of Rule 302(a)(1) is between an interpretation which requires all decisions holding a statute unconstitutional as applied to be directly appealed to this court regardless of the public importance of the decision (*i.e*, the majority's position) or one which permits the court to decline to hear those rulings which have no general applicability

(*i.e.*, *Rehg* as modified by *Lappe*), the latter interpretation is the better choice.

In addition to incorrectly providing for direct review of the instant appeal, the majority's decision to overrule *Rehg* will also create future problems. Each year this court receives thousands of petitions for leave to appeal from decisions of the appellate court under Rule 315 (177 Ill. 2d R. 315). Because this court has a finite amount of time and resources, many of these petitions must be denied, despite the important issues they raise. Viewed in this context, providing mandatory direct appellate review to appeals brought under Rule 302(a)(1) or Rule 603 is justifiable when the cases are of public importance, but it is clearly not justifiable when the issues are of significance to only a single litigant. Inevitably, as a result of the majority's decision today, important appellate court decisions appealed under Rule 315 will not be reviewed by this court.

There are also practical problems with the majority's holding which relate to the difficulty in determining when a statute has been held unconstitutional as applied. For example, assume that in the instant case the defendant had not argued that the false report of a vehicle theft statute was unconstitutional as applied. Instead, assume that in her motion to dismiss, the defendant had maintained "that the state acted arbitrarily and capriciously, and in violation of due process, by charging defendant with this offense." Assume too that the circuit court had summarily granted the defendant's motion to dismiss "based on due process grounds." In such a factual setting jurisdiction would not lie in this court under Rule 603 because, technically, the circuit court did not declare a statute unconstitutional. Yet, if the defendant's due process argument had been framed in terms of the statute being unconstitutional as applied, then, under the majority's holding, this court would have

to accept the appeal. In other words, under the majority's holding today, the availability of a mandatory direct appeal may depend not on the substantive importance of the issues presented in the case, but on the ability of a defendant to describe her complaint as a challenge to the constitutionality of a statute as applied. This court's jurisdiction should not turn on such artful distinctions.

Looking at the circuit court's decision in this case, I am frankly puzzled by the majority's decision to assume jurisdiction. Why is this case here? What is it about this case that merits mandatory appellate review in this court? Why is the *first* substantive review of the issues taking place in this court, which is supposed to be the court of *final* review? Can this case possibly be considered more important than, for example, *People v. Wardlow*, 183 Ill. 2d 306 (1998), a case which raised a constitutional issue of national concern regarding search and seizures, a case in which *certiorari* was granted by the United States Supreme Court (*Illinois v. Wardlow*, 526 U.S. 1097, 143 L. Ed. 2d 669, 119 S. Ct. 1573 (1999)), and a case which was initially reviewed in our appellate court? The majority's decision to overrule *Rehg* is clearly in error. That opinion has served as a necessary limit on this court's mandatory direct appellate jurisdiction, ensuring that cases such as the instant appeal would properly be taken to the appellate court.[4] The majority's conclusion that jurisdiction lies in this court from *all* decisions of

---

[4]Since *Rehg* was filed in October of 1992, this court has decided approximately 58 cases in which jurisdiction was expressly premised on the provisions of Rule 302 and Rule 603, which authorize direct appeal to this court when the circuit court holds a statute "invalid." None of these decisions involved a circuit court ruling as limited in general applicability as the ruling in the present case. See *In re Estate of Gebis*, 186 Ill. 2d 188 (1999); *People v. Fisher*, 184 Ill. 2d 441 (1998); *People v. Lombardi*, 184 Ill. 2d 462 (1998); *People v. Koppa*, 184 Ill. 2d 159 (1998); *People v. Espinoza*, 184 Ill. 2d 252 (1998); *McLean v. Department of Revenue*, 184 Ill.

the circuit court holding a statute unconstitutional as ap-

2d 341 (1998); *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117 (1998); *Russell v. Department of Natural Resources*, 183 Ill. 2d 434 (1998); *People v. Wright*, 183 Ill. 2d 16 (1998); *People v. Sanders*, 182 Ill. 2d 524 (1998); *Graham v. Illinois State Toll Highway Authority*, 182 Ill. 2d 287 (1998); *In re Application of the County Collector of Du Page County for Judgment for Delinquent Taxes for the Year 1992*, 181 Ill. 2d 237 (1998); *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153 (1998); *Cincinnati Insurance Co. v. Chapman*, 181 Ill. 2d 65 (1998); *In re A.A.*, 181 Ill. 2d 32 (1998); *Kunkel v. Walton*, 179 Ill. 2d 519 (1997); *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997); *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252 (1997); *Fletcher v. Williams*, 179 Ill. 2d 225 (1997); *People v. Davis*, 177 Ill. 2d 495 (1997); *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399 (1997); *Murneigh v. Gainer*, 177 Ill. 2d 287 (1997); *In re Marriage of Lappe*, 176 Ill. 2d 414 (1997); *Johnson v. Edgar*, 176 Ill. 2d 499 (1997); *People v. Lewis*, 175 Ill. 2d 412 (1996); *In re Estate of Hicks*, 174 Ill. 2d 433 (1996); *People v. Krueger*, 175 Ill. 2d 60 (1996); *Fink v. Ryan*, 174 Ill. 2d 302 (1996); *McNamee v. State of Illinois*, 173 Ill. 2d 433 (1996); *People v. Nash*, 173 Ill. 2d 423 (1996); *People v. Warren*, 173 Ill. 2d 348 (1996); *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410 (1996); *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510 (1996); *Tully v. Edgar*, 171 Ill. 2d 297 (1996); *People v. Miller*, 171 Ill. 2d 330 (1996); *Wilson v. Department of Revenue*, 169 Ill. 2d 306 (1996); *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161 (1995); *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165 (1995); *People v. Farmer*, 165 Ill. 2d 194 (1995); *Barger v. Peters*, 163 Ill. 2d 357 (1994); *Fields Jeep-Eagle, Inc. v. Chrysler Corp.*, 163 Ill. 2d 462 (1994); *People v. Kimbrough*, 163 Ill. 2d 231 (1994); *People v. Hickman*, 163 Ill. 2d 250 (1994); *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290 (1994); *Doe v. Gainer*, 162 Ill. 2d 15 (1994); *In re C.E.*, 161 Ill. 2d 200 (1994); *Cutinello v. Whitley*, 161 Ill. 2d 409 (1994); *People v. Fate*, 159 Ill. 2d 267 (1994); *People v. R.L.*, 158 Ill. 2d 432 (1994); *People ex rel. Waller v. 1990 Ford Bronco*, 158 Ill. 2d 460 (1994); *People v. Fitzpatrick*, 158 Ill. 2d 360 (1994); *People v. Zaremba*, 158 Ill. 2d 36 (1994); *People v. Meyers*, 158 Ill. 2d 46 (1994); *Nevitt v. Langfelder*, 157 Ill. 2d 116 (1993); *Messenger v. Edgar*, 157 Ill. 2d 162 (1993);

plied is too broad and is plainly contrary to the purpose of Rule 302(a) and Rule 603. For these reasons, I dissent.

II

I wish to address an additional point which, though not strictly necessary for my dissent, nevertheless deserves mention.

Rule 302(a)(1) is patterned after section 1252 and section 1257 of the United States Code. 134 Ill. 2d R. 302(a), Committee Comments, at 234. At one time, section 1252 provided for mandatory direct appeal to the United States Supreme Court from decisions of the lower federal courts holding acts of Congress unconstitutional in proceedings in which the United States was a party. Similarly, section 1257 provided, in pertinent part, for mandatory direct appeal from decisions of the highest state court in which a decision could be had in which a federal law was held invalid, or from decisions in which a state statute was upheld against a federal challenge. In 1988, the mandatory appellate provisions of section 1252 and section 1257 were repealed by Congress. 28 U.S.C. § 1252 (1982), *repealed by* Pub. L. No. 100—352 § 1, 102 Stat. 662 (1988); 28 U.S.C. § 1257 (1982), *amended by* Pub. L. No. 100—352 § 3, 102 Stat. 662 (1988).

A complete discussion of the history of sections 1252 and 1257 and the reasons for their repeal is beyond the scope of this dissent.[5] However, two points should be noted with respect to the repeal of section 1252. First, one of the reasons section 1252 was repealed is that the premise on which the statute was based was no longer considered valid:

    "The presumption that underlay the statute, giving direct and mandatory access to the Supreme Court, was the great

---

*People v. Johns*, 153 Ill. 2d 436 (1992); *King v. Ryan*, 153 Ill. 2d 449 (1992); *People v. Shephard*, 152 Ill. 2d 489 (1992).

    [5]For a full discussion see H. R. Rep. No. 100—660 (1988), *reprinted in* 1988 U.S.C.C.A.N. 766.

importance of the issue. The trouble was that the presumption amounted to a conclusive one, with the Supreme Court virtually obliged to hear the case on its merits without the power to rebut the presumption and spare itself the burden.

And however important the issue might have seemed on its face, measured only against itself and with no other cases to compete with, it was, far more often than not, a much less important one when set in competition with the other huddled masses seeking the attention of the Supreme Court. How important it was would have to be judged in context, and under § 1252 the Supreme Court was denied the power to make that judgment.

The repeal of § 1252 confers that power. The Court will now determine for itself whether a case in the repealed category is important enough to merit its attention." D. Siegel, Commentary on the Repeal of Section 1252, 28 U.S.C.A. § 1252, at 20 (West 1993).

See also 17 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4037.1, at 101-02 (1988). The same point can, of course, be made about the premise underlying Rule 302(a)(1) and Rule 603.

A second reason for the repeal of section 1252 was that, after decades of case law interpreting that provision, the doctrine of mandatory direct review had become "unwieldy and confusing." H.R. Rep. No. 100—660, at 9-10 (1988), *reprinted in* 1988 U.S.C.C.A.N. 766, 774-75. In recent years, our case law interpreting Rule 302(a)(1) has begun to travel down the same path. Indeed, many of the issues addressed in the federal cases are identical to issues which have caused disagreement in this court under Rule 302(a)(1). See, *e.g., Fleming v. Rhodes,* 331 U.S. 100, 102-04, 91 L. Ed. 1368, 1371-72, 67 S. Ct. 1140, 1142-43 (1947) (the statutory language of the predecessor to section 1252 required the Supreme Court to accept direct appeals where a statute had been held unconstitutional as applied); also compare *United States v. Locke,* 471 U.S. 84, 91 n.8, 85 L. Ed. 2d 64, 74 n.8, 105 S. Ct. 1785, 1791 n.8 (1985) (where a federal district court

decided a case on both constitutional and statutory grounds, jurisdiction under section 1252 was not affected; "as long as the unconstitutionality of an Act of Congress is one of the grounds of decision below in a civil suit to which the United States is a party, appeal lies directly to this Court"), with *Trent v. Winningham*, 172 Ill. 2d 420 (1996) (where a circuit court decided a case both on statutory grounds and by declaring a statute unconstitutional, the appeal could not be taken directly to this court under Rule 302(a)(1)). Other difficult issues faced by the Supreme Court when interpreting section 1252 will undoubtedly arise at some point under Rule 302(a)(1). See, *e.g.*, *Heckler v. Edwards*, 465 U.S. 870, 79 L. Ed. 2d 878, 104 S. Ct. 1532 (1984); *Equal Employment Opportunity Comm'n v. Allstate Insurance Co.*, 467 U.S. 1232, 82 L. Ed. 2d 810, 104 S. Ct. 3499 (1984).

A strong argument can be made that Rule 302(a)(1), like its federal counterparts, should be rescinded. The appellate court can, and does, decide important constitutional questions on a regular basis. See, *e.g.*, *City of Chicago v. Youkhana*, 277 Ill. App. 3d 101 (1995), *aff'd sub nom. City of Chicago v. Morales*, 177 Ill. 2d 440 (1997), *aff'd*, No. 97—1121 (U.S. June 10, 1999). If a case requires expedited review, it can be brought directly to this court under Rule 302(b) (134 Ill. 2d R. 302(b)). In light of these facts, and given that the framers of the 1970 Illinois Constitution intentionally modeled this court's jurisdiction parallel to the United States Supreme Court's jurisdiction, I submit that it may be time to reconsider the necessity of Rule 302(a)(1). I express no opinion on the ultimate issue of whether Rule 302(a)(1) should be rescinded or retained. I emphatically reiterate, however, that review of the issues in the case at bar belongs in the appellate court.

CHIEF JUSTICE FREEMAN joins in this dissent.